300 P.2d 635

R. Jerry FIVAS and Alaire J. Fivas,
Plaintiffs and Respondents,

v.

Joseph F. PETERSEN and Florence E.
Petersen, et al., Defendants and
Appellants.

No. 8470.

Supreme Court of Utah.

Aug. 16, 1956.

Cyrus G. Gatrell, Salt Lake City, for appellants.

James W. Beless, Jr., Lewis S. Livingston, Salt Lake City, for respondents.

CROCKETT, Justice.

Plaintiffs brought action to quiet title to land, based on a tax deed purchased from Salt Lake County. Defendants, owners of the fee, resisted unsuccessfully. From adverse judgment they appeal.

Defendants rely on several points for reversal of the trial court's judgment quieting the plaintiffs' title under the tax deed. The principal one, which we find to be determinative, is that the treasurer failed to give the notices to the taxpayer required by sections 59–10–9 and 59–10–10, U.C.A.1953 quoted below.

The action was tried in the lower court entirely on documentary evidence consisting of a certified copy of the tax sale record, the auditor's tax deed, requests for and admissions of fact, interrogatories and answers thereto.

The defendants, Joseph F. Petersen and Florence E. Petersen, were the grantees under a warranty deed which was recorded March 30, 1948. It is admitted that at the top of the deed was a recorder's stamp indicating that the deed was recorded at the request of J. F. Petersen, Riverton, Utah, and that the recorder's records also show that the deed, after recording, was mailed to J. F. Petersen, Riverton, Utah. The assessor, in using the recorder's records to make up the assessment roll failed to list thereon the Riverton or any other address for the defendants. As a result no valuation notice or tax notice was sent to the defendants and they did not pay taxes on the property.

After nonpayment of taxes for the year 1949, the property was advertised and sold at preliminary tax sale to the county, and after nonpayment of taxes for the years 1949, 1950, 1951, 1952 and 1953, the property was sold by the county to plaintiffs for taxes, penalties and interest for the above mentioned five years.

Our statutory provisions relating to the mailing of notice are:

"59–10–9. Mailing valuation notices. —The county treasurer shall furnish to each taxpayer by mail to the address noted on the assessment book, postage prepaid, or leave at his residence or usual place of business, if known, a no-

282

tice of the kind and valuation of property assessed to him, * * *."

"59–10–10. Tax notice.—* * * He [the county treasurer] shall proceed to collect taxes and shall furnish to each taxpayer, * * * by mail, postage prepaid, or leave at his residence or usual place of business, if known, a notice of the amount of tax assessed against him, * * *. If the property has been sold for a prior tax within a period of four years and has not been redeemed, the treasurer shall stamp on the notice 'Sold for a prior tax'; * * *."

The plaintiffs' position is that the above sections are merely directory, or that in any event the qualifying phrase "if known" would relieve the treasurer of this requirement if he did not know the taxpayer's address or if such address did not appear on the assessment rolls. To support this position the plaintiffs point to some changes which were made in the statute formerly dealing with the duties of another county official, the county assessor. The original section 2546 of the Revised Statutes of 1898 [1] provided as follows:

"The state board of equalization must prepare and furnish to each county, an assessment book with appropriate headings, in which must be listed

by the county assessor of each county, all property within the county, and in which must be specified in separate columns under the appropriate head:

"1. The name of the person to whom the property is assessed, together with his postoffice address, giving the street and number or the number of lot and block so far as possible to obtain same from taxpayers' statements, county records, or otherwise.

"2. * * *."

The above section went on to enumerate 15 further specifications as to what must be contained in the assessment book. The 1931 Legislature eliminated all those detailed specifications, substituting the more general requirement that:

"The state tax commission must prepare and furnish to each county an assessment book with appropriate headings, in which must be listed by the county assessor of each county all property within the county." Section 59–5–48, Utah Code Annotated 1953.

The plaintiffs contend that the 1931 amendment indicates a basic change in legislative policy which was intended to shift the burden to the taxpayer to ascertain and pay his taxes when due, whether notice is mailed to him or not.

1. R.S.1898, § 2546; L.1901, ch. 118, § 1; C.L.1907, § 2546; C.L.1917, § 5909; L. 1931, ch. 53, § 1; R.S.1933 & C.1943, 80–5–48.

■ In considering the above contention, it is necessary to keep in mind the fundamental principles which have been established since time immemorial underlying adjudications on tax titles. The forfeiture of one's property for the nonpayment of taxes has always been regarded as a harsh procedure, which may work great hardships on property owners. An awareness of this fact invariably pervades the decisions in such cases, with the result that, in the interpretation and application of statutory requirements antecedent to forfeiture of property, they are construed in favor of the taxpayer[2] and against the taxing authority,[3] and are strictissimi juris.[4] These rules are basic to taxation law.

The 1931 amendment, upon which plaintiffs place reliance was enacted during the depths of an economic depression when taxes were hard to collect. It did eliminate many of the detailed duties of the assessor with respect to the assessment book. However, the fact that such liberalizing statute has gone far does not indicate a legislative intent that all semblance of regularity in the tax procedures may be abandoned, nor that all requirements are now directory and not mandatory. To the contrary, it would seem that the proceedings, having been cut to bare bones of necessity, those remaining should be adhered to, at the very least, with reasonable diligence. It should also be kept in mind that the requirements of the particular statutes here under consideration relating to duties of the treasurer, sections 59–10–9 and 10, have never been substantially changed.

■ In determining whether the statutory requirements of taxing procedure have been met, it is important to remember that it is the county as an entity which constitutes the taxing power, and that it carries on the taxing procedure through its functioning officials. The recorder, by placing a deed on record, the assessor, by carrying the information from the deed to the assessment rolls, and the treasurer, by sending out the notices and collecting the taxes, are all performing duties upon which part of the taxing process depends. If they collectively

2. Smith v. Huber, 224 Iowa 817, 277 N.W. 557, 115 A.L.R. 131; Littlefield v. Petrick, 250 Mich. 437, 230 N.W. 507; Osborne v. Vallentine, 196 S.C. 90, 12 S.E. 2d 856; Conway v. Mosher, 55 Ariz. 467, 103 P.2d 465. Strick compliance with taxing procedures is required and a mandatory interpretation of the provisions of such statutes is preferred. Craig v. Swader, 225 Ala. 366, 143 So. 553; Calcasieu Mercantile Co. v. Frank, La.App. 1935, 161 So. 201; Adams v. Rogers, 158 Okl. 163, 13 P.2d 170.

3. Jensen Candy Co. v. State Tax Commission, 90 Utah 359, 61 P.2d 629, 107 A.L.R. 261; Norville v. State Tax Commission, 98 Utah 170, 97 P.2d 937, 126 A.L.R. 1318; Moss ex rel. State Tax Commission v. Board of Commissioners of Salt Lake City, 1 Utah 2d 60, 261 P.2d 961.

4. Tintic Undine Mining Co. v. Ercanbrack, 93 Utah 561, 74 P.2d 1184.

fail to perform the duties to the taxpayer and the public required by the statutes, that failure is chargeable to the county as the taxing entity.

■ The requirements in the statutes of duties to be performed in the taxing process contemplate that such duties shall be performed with reasonable care and diligence. The discrepancy in name (the warranty deed showed that the grantees were Joseph F. Petersen and Florence E. Petersen while the recorder's records indicated that the deed was recorded at the request of J. F. Petersen, Riverton, Utah) might have some materiality if it had anything whatsoever to do with the failure to receive notice; but inasmuch as no address at all was placed on the assessment roll, and no attempt whatever was made to mail the notices, that discrepancy is not here significant.

■ The failure of the assessor to place any address upon the assessment roll, when the mailing address appeared upon the very deed from which the county obtained the information to tax the property against the defendants, falls short of performance of his duty. We are not here concerned with what the situation might be if the taxpayer's address were not upon the deed.

In regard to the duty of the treasurer, it seems hardly credible that the requirement to furnish notice to the taxpayer at his residence or usual place of business "if known" was intended to be interpreted as narrowly as the plaintiffs would suggest; that is, if the treasurer does not know the address of his own knowledge, or see it on the assessment roll, that he need make no further effort and thus excuse himself from mailing the notices, as was done here. It is obvious that he cannot carry in his head the addresses of any appreciable number of taxpayers, and that he must refer to some records in order to perform this duty. That being so, it would seem proper that he make some reasonable effort to ascertain the address by looking at the record which would be most likely to disclose to him the necessary information: the record in the recorder's office. It seems unreasonable and futile, so far as the taxpayer is concerned, to permit the treasurer to simply look at the assessment roll, which is devoid of any address; then allow him to shut his eyes insofar as any examination of the county records is concerned, assume that he does not know the address, and consider this a fulfillment of his duty. This would not comport with the standard of care which should be required.

The holding of the trial court leads one to ask, what has happened to the ubiquitous "ordinary prudent man" so frequently encountered and so useful in other areas of the law? It seems everywhere axiomatic that one is charged with the duty of reasonable care and inquiry and is deemed to know, not only what he in fact knows, but.

whatever reasonable diligence in inquiry would reveal to him. There appears to be no reason why public officials should be allowed to be both blind and dumb. They are sometimes so represented as the butt of jokes and jibes but this facetious pastime by persons who are blithely unaware that they unwittingly may be furnishing excuses for some public employees to live up to their reputations is of no concern here. It must be judicially assumed to be true, that the public employee is not unlike his brother in other pursuits; that he is reasonably efficient and diligent in the performance of his duties, but will tend to meet only the standard of efficiency that is required of him. To place the stamp of approval upon the action of the county in this case would amount to judicial recognition and approval of the type of inefficiency and ineptitude that is sometimes erroneously assumed to be the standard of work by public employees. Such a substandard should not be recognized as allowable nor encouraged by permitting slipshod procedure by county officials to result in the forfeiture of a taxpayer's property in favor of the county.

No one doubts the merit of the argument that all taxpayers should bear their fair share of the cost of government, nor the desirability of having the law so operate as to facilitate the collection of taxes from everyone. But this is not a case wherein a taxpayer is seeking to avoid payment of his taxes entirely, nor would we lay down any rule which would permit that to be done by taxpayers generally. The tax imposed upon defendant's property, and that of all others, constitutes a continuing and ever increasing lien upon the property, which must eventually be paid. It is undoubtedly true that, particularly in view of the 1931 liberalizing amendment, which omits detailed specification of what the assessor must place on the assessment book, the county treasurer should not be required to conduct any extensive investigation to identify, locate or personally contact taxpayers. It is also to be recognized that it would be impractical in tax proceedings to require actual notice to be given to all taxpayers, and that constructive notice may suffice under proper circumstances. However, it is to be remembered that in other areas of the law, wherein constructive notice is made effective, it is uniformly held that there must be a diligent compliance with the prerequisites thereto.[5]

It is no less important that there be such compliance here. So far as the taxpayer is concerned, the giving of notice is the most critical aspect of the procedure which looks toward the forfeiture of his property. An elemental requisite of deprivation of one of his property by process of law is notice in some manner.

5. Liebhart v. Lawrence, 40 Utah 243, 120 P. 215; Bowen v. Olson, Utah, 1952, 246 P.2d 602; 66 C.J.S., Notice, § 6, p. 640, note 4.

Despite the so-called liberalizing amendment of 1931, it can hardly be supposed that the legislature intended to place the entire responsibility on the taxpayer to find out the valuation, the assessment, the amount of his tax and to pay the same on his own initiative. If it were so, practically all of the statutory requirements could be eliminated or regarded as directory only. If the legislature intended some useful purpose to be served by following the requirements of the statute, including the mailing of notice, such requirements should be followed with at least the usual standard of care applicable throughout the law, that of ordinary and reasonable diligence under the circumstances. This certainly would not permit the county officials to shut their eyes to information contained on the deed, the same record upon which they relied to initiate the taxing process, and claim that the address was not "known," when the barest modicum of care in inquiry would have given the information upon which the requirement of mailing could have been properly carried out.

The general philosophy underlying adjudications of controversies of this character, is well expressed by Chief Justice McDonough in the case of Home Owners' Loan Corp. v. Stevens,[6] quoting Cooley on Taxation:[7]

"'* * * it is for the welfare of every community that the law should favor the citizen in all reasonable measures for the preservation of his estate against losses which might result from his misfortunes or his faults, extending to him all the liberality that is consistent with justice to others and to a proper regard for the interest of the public. The principle is recognized in the liberality shown to those desirous to redeem from the technical forfeiture of mortgage estates, as well as in the provisions made for redemption from judicial sales. It is also very properly recognized in the laws providing for redemption from tax sales'. * * *

"* * * 'It has been justly remarked that the right of the government to sell lands for taxes, * * * can only be maintained on "the absolute sovereignty of the state in the exercise of its taxing power. To divest ownership, without personal notice and without direct compensation, is the instance in which a constitutional government approaches most nearly to an unrestrained tyranny. Whatever tends to modify this right is favorable to the citizen, and ought to be liberally construed * *."''"

It is in the light of the foregoing sound declaration that consideration should be given to the alternatives in this case: (1) That there has been a forfeiture of defendants' property, or (2) That no such for-

---

6. 98 Utah 126, 97 P.2d 744, 748.

7. 3d Ed. Vol. 2, page 1023.

feiture has been effected. It is significant to reflect that under the first alternative the defendants would lose their property and the plaintiffs, as purchasers of the tax title, would retain the benefits of an inequitable bargain in which they purchased the property at a price obviously greatly disproportionate to its value; whereas, under the second alternative the defendants would keep their property and the only loss to anyone would be the plaintiffs losing the benefit of their harsh bargain. Section 59–10–65, U.C.A.1953 establishes a lien in favor of the purchaser of an invalid tax title for the taxes, penalties, interest and costs which the defendants would have to reimburse to plaintiffs. This result is reconcilable with equity and good conscience and is in accord with the best judicial authority and reasoning.

It is our opinion that the instant tax deed is invalid because the statutory requirements relating thereto were not complied with by the county officials. The matter being thus determined, it is unnecessary to consider other assignments of error.

Reversed. Costs to appellants.

McDONOUGH, C. J., and WADE, J., concur.

HENRIOD, J., concurs in the result.

WORTHEN, Justice (dissenting).

I dissent, suggesting that the majority opinion in its eagerness to avoid a forfeiture in this case has imposed an unreasonable burden upon the county treasurers and the taxpayers of this state, one not contemplated by the legislature in its adoption of sections 59–10–9 and 59–10–10, U.C.A. 1953, cited in the main opinion, and has imposed an unwarranted burden on the county recorders.

The majority opinion states:

"Despite the so-called liberalizing amendment of 1931, it can hardly be supposed that the legislature intended to place the entire responsibility on the taxpayer to find out the valuation, the assessment, the amount of his tax and to pay the same on his own initiative."

Is it being suggested that if the legislature did intend exactly what is supposed could not have been intended, that the act is unconstitutional, or that only the author of the opinion is able to interpret legislative intent? There is nothing in said amendment that could lead to any conviction that the legislature considered any great hardship had been done to a taxpayer if the entire responsibility were placed on him to find out the *valuation,* the *assessment,* the *amount of his tax* and to pay the same on his own initiative. If the tax is not to be paid by the initiative of the taxpayer, whose initiative is brought into play? In order to prevent any liberalizing of the duties of the assessor under the 1931 amendment, the majority opinion weaves out of pure figment, and without either legislative

edict or judicial precedent a theory that will undo all that the legislature sought to accomplish and declares:

"* * * it is important to remember that it is the county as an entity which constitutes the taxing power, and that it carries on the taxing procedure through its functioning officials. The recorder, by placing a deed on record, the assessor, by carrying the information from the deed to the assessment rolls, and the treasurer, by sending out the notices and collecting the taxes, are all performing duties upon which part of the taxing process depends. *If they collectively fail to perform the duties to the taxpayer and the public required by the statutes, that failure is chargeable to the county as the taxing entity."* (Emphasis added.)

The statute imposes no duty upon the recorder such as is intimated in the majority opinion to obtain the taxpayer's address. With such mental gymnastics as are exhibited here any declaration by the legislature as to the duties to be discharged by certain officers becomes quite immaterial. The composite whole makes each responsible for the failure of the other, and the failure of one is charged to all.

Strange as it may seem there has been no contention made by either of the parties in this case that the treasurer has neglected to perform his duty. Nor can there be

under the plain meaning of the words of the cited sections. To require the treasurer to go beyond the bounds of his office to search for correct addresses is to place on him an unreasonable burden not contemplated by the legislature. It is very well to state that the treasurer must search the recorder's office, but this will only involve throwing an extra burden on those taxpayers who fulfill their duty to pay their taxes without requiring the county officials to hunt them out.

All one who wishes to avoid or delay payment of taxes has to do under the theory of the main opinion is to make sure his deed is recorded; that his address is nowhere shown and then sit back until the statute of limitations has all but run to see whether or not the property will be valuable enough to make payment of taxes thereon profitable to himself, and the county is helpless to collect taxes until he makes that determination. The main opinion suggests that the county has an ever-increasing tax lien upon the property of the delinquent taxpayer, but ever-increasing liens will not pay the salaries of government officials, nor support needed governmental expenditures.

The majority opinion states that "in the interpretation and application of statutory requirements antecedent to forfeiture of property, they are construed in favor of the taxpayer, and against the taxing authority, and are strictissimi juris." This quotation fails to take into account that the legisla-

ture has specifically placed the burden the other way after a tax sale in this state.

Section 59–10–36, U.C.A.1953 provides:

"A copy of the record of any tax sale duly certified * * * is prima facie evidence of the facts therein shown, and the regularity of all proceedings connected with the assessment, valuation, notice, equalization, levies, tax notices, advertisement and sale of property therein described, and the *burden of showing any irregularity in any of the proceedings resulting in the sale of property for the nonpayment of delinquent taxes shall be on him who asserts it."* (Emphasis added.)

The burden was, therefore, upon the defendants to show a right to notice under the Utah statutes, and I think they have failed to meet this burden. The majority opinion construes sections 59–10–9 and 10 to mean that the treasurer must diligently search for the missing address of the taxpayer, while the taxpayer need do nothing but sit back and hope that the treasurer is unsuccessful.

I think it not unreasonable to require a taxpayer to furnish the assessor with his correct mailing address so that the treasurer will not have to conduct any extensive search for the same. It must be conceded that the general rule concerning taxpayers is that:

(1) "* * * every person is charged with knowledge as to whether his taxes are paid, and if they are not paid he is charged with knowledge that the land may be sold in the manner provided by law, * * *."[1]
and

(2) "* * * it is incumbent upon a property owner to take notice of the known fact that all property is taxed annually, and unless the taxes are paid that the property will be sold at tax sale."[2]

The very life of government is dependent upon the collection of taxes, and the schools and other agencies of government depend upon the speedy and most inexpensive method of tax collection in order that they may function. No obstacles grounded on trivial and ill founded excuses should be permitted to interfere with the functioning of our schools, and our state, county and city governments.

The majority opinion presumes that the only result of their opinion is to avoid a forfeiture in this case and consequently they assume that all justice and equity is on their side. But what the majority opinion fails to take into account is that de-

[1]. Ponder v. Ebey, 194 Okl. 407, 152 P.2d 268.

[2]. Sutter v. Scudder, 110 Mont. 390, 103 P.2d 303, 306. See also many cases cited in American Digest System, Taxation, ⬅ 516.

fendants have shown no right to have any equity considerations enter into this case. We are not here passing on a situation where the property owner has made sure that his address is noted on the assessment roll nor a case where the assessor has been furnished with the taxpayer's address. Nor are we here concerned with a situation where the property owner's failure to pay his taxes was due to an honest belief that another, who had agreed to meet his taxes, was paying the same, nor are we concerned here with a case where the failure to pay was shown to be anything but deliberate and wilful. In all likelihood defendants would not now be offering to pay their taxes were it not for this quiet title action by plaintiff.

The majority opinion by casting duties on the treasurer additional to those prescribed by the plain language of sections 59–10–9 and 10, supra, in effect makes the taxpayer who is diligent and honest concerning his taxes foot the bill in order to provide an additional safeguard for those who are too negligent or lazy or dishonest to bother making inquiry concerning why they had not been assessed and asked to pay taxes, when the legislature has itself provided excellent safeguards for the protection of the nonpaying taxpayer by the provisions of chapter 10 of title 59 providing for publication of delinquent lists and a four-year redemption period after preliminary sale to the county.

The effect of the main opinion is simply to prefer one forfeiture over another—i. e., *rather the honest, diligent taxpayer should forfeit* tax dollars in increased clerical costs in the county treasurer's office *than the slothful, careless, sleeping taxpayer should forfeit* his property for failing to bear his fair share of governmental expense. The plain language of sections 59–10–9 and 10 should not be stretched so far by judicial interpretation for such a result.

I would hold that the taxpayer has the responsibility for seeing that his correct address has been given to the assessor's office, and that he has at least the duty of making inquiry of the assessor and treasurer if he fails to receive tax and valuation notices for any one year.