354 P.2d 1066

Rennold PENDER, Plaintiff and Appellant,

v.

Mose ALIX et al., Defendants and Respondents,

v.

Leon BROWN, Intervening Plaintiff and Respondent.

No. 9167.

Supreme Court of Utah.

Aug. 24, 1960.

Crockett, C. J., dissented.

Rennold Pender, Richard S. Johnson, Salt Lake City, for appellant.

Boyden, Tibbals, Staten & Croft, Salt Lake City, for intervening plaintiff and respondent.

HENRIOD, Justice.

Appeal from a summary judgment in favor of Intervenor Brown in a quiet title action. Affirmed with costs to Brown.

In September, 1942, Brown received a tax deed from Salt Lake County to the subject property. In 1947 Pender filed a quiet title suit in which the property, along with many other parcels, was described. He joined Salt Lake County as defendant, but not Brown. In 1948, he filed a lis pendens giving notice of the pending suit. Later Brown learned of Pender's action, and intervened in July, 1959, setting out the tax deed, alleging continued occupancy and payment of taxes thereon at all times after receipt of the tax deed (for about 17 years), and setting up Title 78–12–5.2, U.C.A.1953 in support of his title.

Pender answered, generally denying Brown's contentions. Thereafter Brown filed authenticated copies of tax receipts and the tax deed, valid on its face, along with a motion for summary judgment, again pleading Title 78–12–5.2 as a defense to Pender's claim. Nowhere did Pender plead or attempt to prove occupancy or payment of taxes during or after the four years ensuing after Brown obtained his tax deed.

Under such uncontroverted circumstances and applying the provisions of Title 78–12–5.2 thereto, it becomes obvious that Pender was vulnerable to the four-year limitations statute mentioned. Therefore, there was no genuine issue of fact triable and the summary judgment inescapably was proper.

We have interpreted the statute the same way in two previous cases of similar factual import,[1] to which reference hereby is made.

WADE, McDONOUGH, and CALLISTER, JJ., concur.

CROCKETT, Chief Justice (dissenting).

I dissent.

It should be kept uppermost in mind that this is a review of a summary judgment; that it is a drastic remedy which deprives the party of the opportunity to present his evidence; and which the court therefore should be extremely reluctant to grant. When it does so, the record must be reviewed in the light most favorable to the defeated party; and wherever the claims of the parties as to facts are in dispute, it must be assumed that his claims will be believed. This is so because he should be turned out of court without a trial only when, in viewing the record as above stated, and all doubts are resolved in his favor, he nevertheless would not be entitled to prevail.[1]

Plaintiff in intervention, Brown, hereinafter referred to as the plaintiff, is seeking to quiet title to the property in question. The universally accepted rule is that he must prevail upon the strength of his own title and may not rely merely upon the weak-

1. Hansen v. Morris, 1955, 3 Utah 2d 310, 283 P.2d 884; Peterson v. Callister, 1957, 6 Utah 2d 359, 313 P.2d 814.

1. Young v. Texas Co., 8 Utah 2d 206, 331 P.2d 1099.

ness of his adversary.[2] Even with the statutory help now provided for tax titles, hereinafter discussed, he certainly must show at least some semblance of a tax title before may have the benefit thereof.

It cannot be assumed that the plaintiff Brown has a tax title merely because of the fact that he received a quitclaim deed from Salt Lake County, which has no credit except its own recitals. Absent such an assumption, there appears not one scintilla of evidence in the record competent to prove that Salt Lake County ever acquired an interest in this property from any source, for taxes or otherwise. Consequently, it could not convey to Leon Brown any interest in the property, tax title or otherwise. The only possible supposition that the county ever acquired an interest in this property has to be gleaned from the conjecture that the county must have had some interest in the property because the county clerk presumed to issue a quitclaim deed.

It seems to me to be a strange concept that does violence to law and logic, to leap to a conclusion that the county must have had some title or interest in the property merely because an official made a quitclaim deed to a third party. I have never seen any law, and doubt that any can be found, that will support the indulgence of any such presumption. We do not indulge it with respect to any other grantor of property. He must show some source of title before a conveyance by him has any validity. I am led to ask where is the fairness or the justice of indulging such a presumption with respect to the county? Suppose such a deed were made in error, or even by evil design? Would we assume that the county must have had some title and that its grantee could stand upon the same and compel the owner to disprove the claim of title? Obviously not.

I do not question that it is fair and proper that property holders pay their share of taxes, failing which, a lien must attach to the property and stand until it is paid. But when the taxing authority reaches out to take the property itself, it has always been held to the necessity of meeting the requirements of the law. The universally accepted rule was stated in the case of Tintic Undine Mining Co. v. Ercanbrack et al.,[3] "The rule, therefore, is that all the preliminary requirements of the statute, made conditions to the exercise of the right and power to sell, and designating the various proceedings which culminate in the sale, must have been strictly complied with," quoting other authorities with approval.

It is true that the rigid rules requiring proof of all steps in the taxing process to establish a tax title when challenged have

2. Mercur Coalition Min. Co. v. Cannon et al., 112 Utah 13, 184 P.2d 341.

3. 93 Utah 561, 74 P.2d 1184, 1187. See also Fivas v. Petersen, 5 Utah 2d 280, 300 P.2d 635; Tree v. White, 110 Utah 233, 171 P.2d 398.

been ameliorated in recent years. As part of the aftermath of the great depression of the 1930's, when it had been very difficult to collect taxes, our legislature in an effort to strengthen the taxing process amended our statutes relating to the taxing process. By Ch. 101, S.L.U.1939 it amended Sec. 80–10–68, R.S.U.1933, adding, inter alia, two sections designed for the above purpose. The first is what is now sub-section (5) of 59–10–64, which authorizes the county auditor to execute deeds conveying property sold at the May sale, and providing that, "when executed and delivered [the deed], * * * *shall be prima facie evidence of all proceeding subsequent to the preliminary sale and of the conveyance of the property to the grantee in fee simple."* And for the same purpose provided in sub-section (7) of the same statute that a copy *"of the record of tax sale * * * duly certified by the record-er* under the seal of his office, *shall be prima facie evidence * * * of the conveyance to the county in a fee simple of the property therein described and of the regularity of all proceedings preliminary thereto."* (Emphasis added.)

It is of the utmost significance, and it seems to me persuasive upon the point in controversy here, that the legislature provided only that the two documents just referred to: the auditor's deed and the certificate of tax sale should be deemed prima facie evidence of the regularity of tax proceedings or of the vesting of title in the county or its grantee. The fact that it expressly so provided in those two sections and omitted to so provide with respect to the quitclaim deeds authorized by sub-section (8), upon which the plaintiff Brown purports to rely, clearly manifests that there was no intention that such a quitclaim deed would constitute any proof that the county had any interest in the property, tax title or otherwise, or that it conveyed any.

Plaintiff Brown's brief manifests an awareness of the soundness of the above position. In it he makes a specious and actually misleading argument wherein he quotes the portion of sub-section (5) above, which provides that the auditor's deed shall be prima facie evidence of the conveyance of the property to the grantee, and then as part of the same quote in his brief, jumps to sub-section (8) which merely provides that where there has been no purchaser from the county, and the county commission later decides to sell the property, the county clerk is authorized to execute deeds. His coupling of these sections together is done in such a manner as to imply that the language of sub-section (5) applies to quitclaim deeds authorized by sub-section (8), which it obviously does not. But he fails to point out or to take cognizance of the fact that sub-section (8) contains no language giving deeds issued thereunder any credit such as is given the auditor's deed or the certificate of tax sale by sub-sections (5) and (7)

above, and there is no language correlating said sub-section (8) to them.

The plaintiff Brown failed to present in evidence either the auditor's deed referred to in sub-section (5) or the certificate of tax sale referred to in sub-section (7). If they have been issued with respect to this property, it would have been a simple matter for him to have procured copies and presented either one or the other in evidence and thus have obtained the benefit of the statutes as intended. Having failed to do so, it is not the function of the trial court, nor this court, to fill in the hiatus in proof.

Even though sub-sections (5) and (7) discussed above were admittedly designed to protect those who purchase tax titles, with the ultimate effect of making the taxing proceedings themselves more effective, it certainly cannot be supposed that the legislature intended to go so far as to confer a presumption of title upon anyone who merely used the term "tax title" or introduced some deed purporting by its own recitals to establish such a title. The statute could operate only in a situation where there is at least some semblance of a "tax title." But it could not be applicable where there is nothing but conjecture based upon the assumption that because the county issued a deed it must have acquired some interest resulting from a tax sale.

I reiterate and emphasize that in the absence of the statutory help to tax titles provided for in sub-sections (5) and (7) discussed above, which applies only to an auditor's deed or a certificate of tax sale, there is not one whit of evidence, and in fact nothing except an entirely unwarranted conjecture, that there ever was any tax lien on this property; and thus there is no basis upon which a finding could rest that either the county or the plaintiff Brown ever had any kind of tax title to it. Therefore, the authorities upon which he relies as to the unassailability of his claimed "tax title" have no application here.

In a further effort to protect purchasers of tax titles and thus bolster the effectiveness of taxing proceedings the legislature enacted Ch. 19, S.L.C.1951, the so-called "short statute of limitations" (now 78–12–1 et seq., U.C.A.1953). Sec. 78–12–5.2 provides that, "no action or defense for the recovery or possession of real property * * * shall be commenced or interposed against the holder of a tax title after the expiration of four years from the date *of the sale * * * of such tax title to any county * * *.*" The next succeeding section, 78–12–5.3, is even more generous to the tax title holder. It provides that a "tax title" means any title, "whether valid or not, which has been derived through or is dependent upon any sale, conveyance, or transfer of such property in the course of a statutory proceeding for the liquidation of any tax levied against such property, *whereby the property is relieved from a tax lien."* (Emphasis added.)

There can be no doubt that the above statutes were purposed to modify the rigid rules requiring one who relied on a tax title to prove the regularity of all the tax proceedings. But nothing could be plainer than that these statutes were not designed to simply permit the use of the magic words, "tax title" and eliminate all necessity of proving that the claimant had something that at least resembled one. Even the most casual reading of their language indicates that they presuppose that before one could have their benefit, there must be some modicum of proof that there has been a tax delinquency and a tax sale. In other words, that there be at least some semblance of a "tax title" even though it may be irregular and invalid. But they cannot be applicable where there is a total absence of proof of any tax title as is the case here.

Inasmuch as the case is being disposed of upon summary judgment, the issue of possession is not reached. Yet I deem it not amiss to make this observation: On that issue the defendant relies solely upon his own affidavit, which the fact trier may or may not believe because of his obvious self-interest.[4] He has never been subject to cross-examination on the self-serving statements therein. In dispute thereof are affidavits of two disinterested witnesses who were present in the neighborhood during the years in question concerning lack of possession and occupancy of the property. Their statements admittedly are not as conclusive on the subject as might be desired. However, this fact might be considered by a fact trier to the credit of the affiants rather than the contrary. It is hardly to be expected that they would have kept constant watch over just what was happening on this property. Yet their statements are sufficient to cast grave doubt upon the claims of plaintiff Brown.

The court's decision, insofar as it relates to the instant case is not too important and gives me no concern because Pender himself relies upon a claim of title which also attempts to "lift itself by its own bootstraps" by relying on recitals in his own deed of conveyance as a foundation for a legal title, which he cannot properly do any more than can the plaintiff Brown. But the latter, having the burden of proof, and having failed to show even a pretense of title, must fail.

The real difficulty with the court's decision here is that it sets what I regard as a dangerous precedent for taking away one's property and establishing title thereto without any foundation whatsoever, merely because of some new and unwarranted magic ascribed to the words, "tax title."

It is a radical departure from the time-honored attitude of the courts on such questions. Historically they have stood as a bulwark of protection against the heavy hand

4. See Page v. Federal Security Ins. Co., 8 Utah 2d 226, 332 P.2d 666.

of authority when it reached out to confiscate one's property for taxes. The pendulum appears now to have swung to the opposite extreme. The thought underlying the court's decision seems to be that nothing must stay the onward sweep of the taxing machine whose purpose is to gather funds to satisfy the insatiable appetite of the edacious minotaur, tax; and that the taxpayer must hurry and pay without delay at whatever cost to the rights of the individual property holder. I would put the one claiming the property had been forfeited for taxes to at least the meager proof which the statutes now demand of him before allowing him to establish title to the property.