Richard Gerald DYE, aka R. Gerald Dye, and Gas Producing Enterprises, Inc., a corporation, Plaintiffs and Respondents,

v.

MILLER & VIELE, a corporation, Lee Charles Miller, Lesley F. Lewis, and Chevron Oil Company, a corporation, Defendants and Appellants.

No. 15475.

Supreme Court of Utah.

Nov. 9, 1978.

---

Macoy A. McMurray, Robert J. Dale, Salt Lake City, for defendant and appellant.

Leonard J. Lewis, Robert G. Pruitt, Jr., Phillip Wm. Lear, Salt Lake City, for plaintiffs-respondents.

HALL, Justice:

Defendant ("Miller & Viele") appeals from that portion of a summary judgment quieting title in plaintiff ("Dye") to an undivided one-half interest in all of the minerals[1] in the NW ¼ NW ¼, Section 29, T1S, R1W, U.S.B.M., situated in Duchesne County, Utah.

▆ Dye and Miller & Viele each moved for summary judgment on undisputed facts abstracted as follows: The 40-acre parcel in question was the subject of a 1927 preliminary tax sale to Duchesne County to pay delinquent real property taxes thereon for the year 1926. Dye claims title by virtue of a subsequent tax deed issued pursuant to the 1932 "May Sale" (no redemption having been made following the preliminary sale), and mesne conveyances thereafter. Miller & Viele's claim to title stems from a 1928 mortgage foreclosure and execution sale, Sheriff's Deed, and mesne conveyances thereafter. Neither Miller & Viele, nor any of its predecessors or successors in interest, have paid any taxes nor occupied or claimed any right of possession prior to the interposition of its defense in this lawsuit. In 1946, one of Dye's predecessors in interest solicited and obtained a quitclaim deed from Miller & Viele to the said 40-acre parcel wherein the one-half mineral interest in dispute was reserved. In 1964, Miller & Viele *purported* to lease said disputed one-half mineral interest to Chevron Oil Company (a defendant who significantly did not join in the motion for summary judgment nor as an appellant here). In 1971, the Utah Board of Oil and Gas Conservation entered its order establishing the whole of said Section 29 (640 acres) as a drilling unit and directing that only one well be drilled for the production of oil, gas, or hydrocarbons therefrom. Miller & Viele makes no claim of actual possessory rights, except as might be asserted under a document entitled "Communitization Agreement," commonly called a "pooling agreement," dated October 30, 1973. This agreement was exe-

---

1. The judgment quieted title in Dye to the surface as well, but no appeal is taken therefrom.

cuted by Chevron, Miller & Viele, Dye, and all others having an interest in said Section 29 which comprises the drilling unit. The pooling agreement is not a grant or transfer of interest, but one terminable by mutual consent and by certain other conditions set forth therein. Said agreement designated Chevron as the "operator" and its function was to drill a well (some one-half mile from the property in dispute), for the purpose of accumulating the oil from the subsurface areas of all of said Section 29, to sell it, and to allocate the proceeds prorata to the signatories thereto as their interests appear therein.

Miller & Viele rely upon the provisions of U.C.A., 1953, 78–12–5.1 and 5.2 as supportive of its challenge to Dye's tax title. Those provisions read as follows:

78–12–5.1. Seizure or possession within seven years—Proviso—Tax title.—No action for the recovery of real property or for the possession thereof shall be maintained, unless the plaintiff or his predecessor was seized or possessed of such property within seven years from the commencement of such action; provided, however, that with respect to actions or defenses brought or interposed for the recovery or possession of or to quiet title or determine the ownership of real property against the holder of a tax title to such property, no such action or defense shall be commenced or interposed *more than four years after the date of the tax deed,* conveyance, or transfer creating such tax title unless the person commencing or interposing such action or defense or his predecessor *has actually occupied or been in possession* of such property within four years prior to the commencement or interposition of such action or defense or within one year from the effective date of this amendment. [Emphasis added.]

78–12–5.2. Holder of tax title—Limitations of action or defense—Proviso.— No action or defense for the recovery or possession of real property or to quiet title or determine the ownership thereof shall be commenced or interposed against the holder of a tax title *after the expiration of four years from the date of the sale,* conveyance or transfer of such tax title to any county, or directly to any other purchase thereof at any public or private tax sale and after the expiration of one year from the date of this act. Provided, however, that this section shall not bar any action or defense by the owner of the legal title to such property where he or his predecessor *has actually occupied or been in actual possession of such property within four years* from the commencement or interposition of such action or defense. And provided further, that this section shall not bar any defense by a city or town, to an action by the holder of a tax title, to the effect that such city or town holds a lien against such property which is equal or superior to the claim of the holder of such tax title. [Emphasis added.]

Based upon the foregoing facts, the trial court ruled that Miller & Viele had not been in actual possession within the contemplation of the statute relied upon and that its claim was therefore barred.

■ Miller & Viele concede that the only issue on appeal is whether or not its claim is barred by the provisions of the statutes upon which they rely. The sum and substance of its contention is that said statutes provide absolutely no time limitation for a challenge to a tax title, provided there has been actual occupancy or possession any time, however brief, and however obtained, within four years from the initiation of the challenge. The fallacy of that contention was previously observed by this Court in *Peterson v. Callister*[2] wherein it was stated:

Title 78–12–5.1 is a statute of limitations which prevents the assertion of a defense by a record owner if he has not had possession of the property during a

2. 6 Utah 2d 359, 313 P.2d 814 (1957), reaffirming *Hansen v. Morris,* 3 Utah 2d 310, 283 P.2d 884 (1955).

four-year period after one has received a tax title thereto, valid on its face, and this is true whether the tax title is valid or not. It is not unlike other statutes of limitation, such as those barring an action on negotiable paper by passage of time. The obligation in such case may remain but the holder cannot enforce it. Likewise, title technically may not have passed here, but the record owner cannot assert his title because of the statute's interdiction against asserting title or setting up defenses. It is a statute of repose, obviously intended to lay at rest claims against tax titles which are asserted more than four years after acquisition of a tax title under statutory proceedings, and where the record owner has not had possession during that period.

The decision in that case, in anticipation of just such a future case as the one now presented, made the further observations about the content of Titles 78–12–5.1 and 5.2:

. . . If read literally and not in context with the entire statute, some of the wording might make it appear that one holding a tax title, say, for twenty-five years, who commences an action thereon, could be defeated if a defendant having a record interest in the property could show that he had possession, even for a brief time, within the four years next prior to the commencement of the action. We believe the legislation had in mind a four-year statute of limitations barring claims against tax titles, which four-year period dated from the initiation of the tax title, during which period any claimant against the tax title must have had possession of the property to protect any claim he might have. Any other interpretation does not square with the general nature and purpose of the act, and could lead to novel and, we believe, unintended results, so as to defeat the entire purpose of a statute that seems to be designed to settle, not confuse, and to make certain, not uncertain, titles based on statutory liquidation of tax charges.

The trial court correctly determined that Miller & Viele had not been in actual possession any time during the four years following the tax deed. In fact, it is abundantly clear from the facts that it has *never* been in actual possession.

Miller & Viele does not claim a share of the oil production by presence on the subject property either by itself or by its "lessee," Chevron, nor does it claim the oil in place under such property as an actual possessor within its boundaries. Rather, it advances a novel theory that might best be termed "constructive, adverse possession." It claims that Chevron, as operator of the well and having possession of the oil at such time as it is drained off and captured in storage tanks, is somehow in "actual possession" of the oil in Dye's land, and being a "lessee," Miller & Viele, as "lessor," becomes the "actual possessor" of said oil. The obvious fallacy of such contention is that if the pooling agreement confers upon Chevron, as "operator," the actual possession of the oil under Dye's land, it would similarly have actual possession of the oil under the land of every other signatory to the agreement. Accordingly, each and every signatory would be in actual possession of the oil of each and every other signatory in the entire "pool."

Miller & Viele's claim of possession is not by virtue of its *purported* lease to Chevron, but stems from Chevron's role as operator, chosen as such under the terms of the pooling agreement. Although Miller & Viele's claim is represented as adjunct to the lessor-lessee relationship it has with Chevron wherein it claims that the possession of the lessee is that of the lessor, such is of no significance here because its claim would be the same if Gulf Oil or Conoco, or one of the other signatories had been designated as the "operator," since it is through the "operator" who has authority to claim the field that possession is claimed.

The order establishing said Section 29 as a drilling unit and limiting it to a single well, and the subsequent Communitization Agreement, vested no authority in the operator under the pool agreement to enter

upon the lands of the signatories thereto. That fact negates any concept of possession of oil in place under the lands owned or controlled by the signatories by any sort of remote control, or that the operator could enter upon their lands to extract any oil. In fact, if he did so, he would be a trespasser. Also, such a concept offends the doctrine of pedis possessio, the application of which is generally regarded as necessary to satisfy the definition and interpretation of the phrase "actual possession."

Preliminary to the citation of any authority in direct support of the limited meaning of "actual possession," such type of possession is suitably illustrated by our adverse possession statute [3] and case law which reflect the ordinary understanding of "actual possession" calling for the payment of taxes, cultivation, improvements, fencing, use of the products of the soil, annual labor, and the like. Such circumstances reflect actual occupancy and are pertinent to the pedis possessio concept cited in *Churchill v. Onderdonk*,[4] wherein it is stated:

'Actual possession' is a legal phrase, is put in opposition to the other phrase, 'possession in law,' or 'constructive possession.' Actual possession is the same as pedis possessio or pedis positio, and these mean a foothold on the land, an actual entry, a possession in fact, a standing upon it, an occupation of it, as a real, demonstrative act done. It is the contrary of a possession in law, which follows in the wake of title.

The application of the same principle is also illustrated in the decision of this Court in *Kanawha v. Carbon*.[5] The concept of actual possession simply does not conform to the facts of this case where the oil is drained from the lands of the signatories to the "pool" agreement consisting of 640 acres owned by many, with only a delegated right to an operator to "tap the pool" with a solitary well, off-set from all of the ownerships within the Section, save one.

Miller & Viele cites a case [6] with approval which espouses the foregoing conclusions and which is actually authority in support of Dye's contention. Dye also relies on that case which, in distinguishing rights of owners in similar circumstances, states as follows:

. . . whereas the drilling and production of oil from a unitized area constitutes an exercise and user of mineral rights throughout the entire unit and operates as a substitute for performance of drilling obligations contained in a mineral lease, these acts are not to be regarded as an eviction of the surface owner's possession of the minerals or of his exclusive right thereto when the explorations are not conducted on the land itself.

A leading case which rejects Miller & Viele's claim of actual possession by remote control and adheres to the limited application of actual possession is the case of *Phillips v. Peterson*,[7] and our own case of *Peterson v. Callister*,[8] also points out that tax title statutes are those of repose. In further support of Dye's position is the case of *Pan American v. Candelaria* [9] which holds that an operator, such as Chevron here, operating an off-set well under a pool agreement, cannot claim possession of property beyond that upon which the well is situated.

The authorities, and the very statutes upon which Miller & Viele relies, require that a claimant in derogation of a tax title *must* have had *actual* possession at a *designated* time in order to defeat such title. The fact that those statutes require *actual* possession to support a successful title challenge is the most significant proscription thereof, the time of assertion, i. e., "unless

3.  U.C.A., 1953, 78–12–12.

4.  59 N.Y. 134 (1874).

5.  Utah, 535 P.2d 1139 (1975).

6.  *Dixon v. American Liberty Oil Co.*, 226 La. 911, 77 So.2d 533 (1954).

7.  218 F.2d 926 (10th Cir. 1954), mentioned in Myers "Law of Pooling," Vol. I, Sec. 13.02(2), p. 439.

8.  Supra, footnote 2.

9.  403 F.2d 351 (10th Cir. 1968).

. . . been in possession . . . within four (4) years prior to . . . interposition of such . . . defense . . . .." being of no consequence if actual possession is not first established. In light of Miller & Viele's concession that its claimed "actual possession" is derived from the pooling agreement and Chevron's authority as operator (an untenable position as outlined above), even if Miller & Viele *itself* had been designated as the operator, its claim under the statutes would be defeated.

We affirm the decision of the trial judge, and in so doing reaffirm the holdings of *Peterson v. Callister* and *Hansen v. Morris.*[10] Costs to Dye.

ELLETT, C. J., and MAUGHAN and WILKINS, JJ., concur.

CROCKETT, Justice (dissenting):

I am unable to agree with the position taken by the trial court and affirmed by our main opinion that:

The trial court correctly determined that Miller & Viele had not been in actual possession any time during the four years following the tax deed. In fact, it is abundantly clear from the facts that it has *never* been in actual possession. [Emphasis in original.]

The quoted statement appears to be based upon the proposition that the defendant had not been physically sitting in or upon its one-half mineral interest in the property, that is, the oil deep below the surface. The controversy involved here does not fit into the usual pattern of tax title cases, wherein Section 78–12–5.1 requires the owner to be in actual possession within four years in order to assert his claim of ownership.

In the instant situation, the defendant asserts no claim to the surface rights of the land involved; and therefore could not be in actual occupancy of the surface of the property as contemplated in the usual sense. But the important fact is that by the pooling arrangement with Chevron Oil Company for drilling for oil, the defendant did exercise as much dominion, control and possession of the property in controversy, i. e., the mineral rights, as possibly could be done. It seems to me that in such circumstances where defendant was doing everything the law would permit in regard to occupying its property, it is unfair and unjust to hold that its interest therein is adversely affected because it did not do something which was impossible in regard to being in actual possession of the property.

Consequent to what I have said, for whatever interest it had to protect in the claimed mineral rights, the defendant should be deemed to have been in actual possession thereof.