Robert S. FREDERIKSEN and Jeanne G. Frederiksen, Plaintiffs and Respondents,

v.

Hal A. LaFLEUR, Mary Helen Parsons, Verne Eliason, Charles Moore, Alan T. Parsons, Jill A. Vanlangewald, David K. Smith, Margene Tweedie, and Edith K. Walker, Defendants and Appellants.

No. 17121.

Supreme Court of Utah.

June 22, 1981.

David R. Irvine, Salt Lake City, for defendants and appellants.

Philip C. Pugsley, Salt Lake City, for plaintiffs and respondents.

OAKS, Justice:

This is an action to quiet title to a plot of land. Plaintiffs are the record owners, and defendants are the purchasers under a tax deed. From a judgment quieting title in plaintiffs, defendants appeal. The issue on appeal is the applicability of the short statute of limitations designed to protect tax titles, and its relationship to the statutory requirements for adverse possession. All statutory citations are to Utah Code Annotated, 1953.

The disputed property is a vacant lot. Neither party has constructed any improvements or performed any work on it at any time material to this lawsuit. In 1966, the property was sold to Salt Lake County for the then-owner's failure to pay taxes. In 1970, Salt Lake County sold the property at a tax sale to the defendants (hereafter referred to as "tax purchasers"), who received

a tax deed. The tax sale was conducted by an employee in the Salt Lake County Auditor's office whose appointment as deputy county auditor was not made in writing and filed in the office of the Salt Lake County Clerk and who had failed to take any oath of office, as required by § 17–16–7. The tax purchasers have paid taxes on the property since 1971. For the years 1971 through 1976, the taxes were not timely paid, but the property was redeemed after the taxes had fallen delinquent.

In 1967, the original owner sold the property to Olympia Sales Company, which in 1973 deeded the property to plaintiffs (hereafter referred to as "record owners"), who owned and controlled Olympia. During the times material to this lawsuit, it does not appear that anyone in the record owners' chain of title ever paid taxes or redeemed the property from its tax sale.

In April, 1979, the record owners instituted this action to quiet title, and obtained judgment. The trial court held (1) that the tax purchasers' tax title is invalid because the tax sale was conducted by an unqualified officer; (2) that the tax purchasers' failure to pay all taxes when due prevents their claiming the property by adverse possession; (3) that because the tax purchasers were unable to establish any valid claim to the property in themselves, they had no basis to assert a statute of limitation de-

fense; and (4) in any event, that the record owners of the property are entitled to a presumption of possession, and hence are not barred by the statute of limitations from bringing this action. We reverse.

American courts have long looked upon tax titles with a jaundiced eye.[1] Like the courts of most other states, this Court has consistently held that statutes providing for the sale of tax-delinquent lands and the issuance of tax deeds pursuant to such sales are to be construed narrowly and in favor of the tax debtor.[2] We regard this position as settled law in this state, except to the extent it has been limited by legislative enactment.

In order to give increased stability to tax titles and thereby augment the revenues of state and local governments,[3] in 1951 the Utah Legislature enacted a special statute of limitations applicable to tax titles. Sections 78–12–5.1 through –5.3. Section 78–12–5.1 provides, *inter alia*, that no action for the recovery or possession of or to quiet title to real property may be commenced against the holder of a tax title more than four years after the date of the tax deed, conveyance, or transfer creating the tax title, unless the person commencing the action has "actually occupied or been in possession" of the disputed property within four years of the commencement of the action.[4] Section 78–12–5.2 merely reiter-

---

1. *Shaffer v. Mareve Oil Corp.*, 157 W.Va. 816, 204 S.E.2d 404 (1974); Note, "The Current Status of Tax Titles: Remedial Legislation v. Due Process," 62 Harv.L.Rev. 93 (1948); R. Young, "The Tax Deed—Modern Movement Towards Respectability," 34 Rocky Mt.L.Rev. 181 (1962).

   "It had become proverbial, that a tax title was no title at all; and a sale for taxes was as near a mockery as any proceeding having the appearance of legal sanction could be. The principal cause was the difficulty in proving the various steps essential to the validity of such sale . . ." *O'Grady v. Barnhisel*, 23 Cal. 287, 292–293 (1863).

2. *Fivas v. Petersen*, 5 Utah 2d 280, 300 P.2d 635 (1956); *Tintic Undine Mining Company v. Ercanbrack*, 93 Utah 561, 74 P.2d 1184, (1938); *Olsen v. Bagley*, 10 Utah 492, 37 P. 739 (1894); P. Lear, "Tax Sales and Tax Titles in Utah: Windfalls and Windstorms," 1 J. of Contemp. Law 299, 306 (1975).

3. P. Lear, note 2 *supra*, at 306.

4. Section 78–12–5.1 provides:

   No action for the recovery of real property or for the possession thereof shall be maintained, unless the plaintiff or his predecessor was seized or possessed of such property within seven years from the commencement of such action; provided, however, that with respect to actions or defenses brought or interposed for the recovery or possession of or to quiet title or determine the ownership of real property against the holder of a tax title to such property, no such action or defense shall be commenced or interposed more than four years after the date of the tax deed, conveyance, or transfer creating such tax title unless the person commencing or interposing such action or defense or his predecessor has actually occupied or been in possession of such property within four years prior to the commencement or interposition

ates the previous section in all respects relevant to the disposition of this case.[5] Finally, § 78–12–5.3 defines "tax title" in the preceding sections as "any title to real property, whether valid or not, which has been derived through" a tax sale.[6]

The tax purchasers ground their appeal on these statutes. They contend that, since the record owners' action was filed more than four years after the tax sale at which the tax purchasers obtained title to the property, it is time-barred by the special statute of limitations, notwithstanding the vulnerability of the purchasers' tax title (because the tax sale was defective)[7] and the purchasers' inability to show adverse possession (because they did not make timely payment of taxes on the property).[8] The tax purchasers rely on prior decisions of this Court, such as *Peterson v. Callister*, 6 Utah 2d 359, 361, 313 P.2d 814 (1957), where this Court declared:

Title 78–12–5.1 . . . is not unlike other statutes of limitation, such as those barring an action on negotiable paper by passage of time. The obligation in such case may remain but the holder cannot enforce it. . . . It is a statute of repose, obviously intended to lay at rest claims

against tax titles which are asserted more than four years after acquisition of a tax title under statutory proceedings, and where the record owner has not had possession during that period.

The record owners, in reliance upon *Lyman v. National Mortgage Bond Corp.*, 7 Utah 2d 123, 320 P.2d 322 (1958), urge a construction of the special statute of limitations that would permit it to be applied only in conjunction with the statutory provisions on adverse possession.[9] Such a construction would require a tax title holder attempting to assert a statute of limitations defense to satisfy the requirements of both the limitations and the adverse possession statutes. Since the tax purchasers in this case admittedly cannot meet every requirement of the adverse possession statute, this approach would effectively deprive them of the right to raise the statute of limitations, whose terms they do meet.

■ Section 78–12–7.1 provides that a party who has held tax title for a period of at least four years preceding the commencement of an action against him is presumed to be the owner of the property by adverse possession.[10] The statute further provides

of such action or defense or within one year from the effective date of this amendment.

5. Section 78–12–5.2 specifically states that it relates to any sale made "to any county, or directly to any other purchase [sic] thereof at any public or private tax sale." It makes specific exception for "the owner of the legal title to such property where he or his predecessor has actually occupied or been in actual possession" within four years of the commencement of the action.

6. Section 78–12–5.3 provides:
The term "tax title" as used in section 78–12–5.2 and section 59–10–65, and the related amended sections 78–12–5.1, 78–12–7, and 78–12–12, means any title to real property, whether valid or not, which has been derived through or is dependent upon any sale, conveyance or transfer of such property in the course of a statutory proceeding for the liquidation of any tax levied against such property whereby the property is relieved from a tax lien.
\* \* \* \* \* \*

7. *Page v. McAfee*, 26 Utah 2d 208, 487 P.2d 861 (1971).

8. Section 78–12–7.1; *Bowen v. Olson*, 2 Utah 2d 12, 268 P.2d 983 (1954).

9. Sections 78–12–9 and –12. There is also an adverse possession statute specifically applicable to tax title holders, § 78–12–7.1, discussed hereafter.

10. Section 78–12–7.1 provides:
In every action for the recovery or possession of real property or to quiet title to or determine the owner thereof the person establishing a legal title to such property shall be presumed to have been possessed thereof within the time required by law; and the occupation of such property by any other person shall be deemed to have been under and in subordination to the legal title, unless it appears that such property has been held and possessed adversely to such legal title for seven years before the commencement of such action. Provided, however, that if in any action any party shall establish prima facie evidence that he is the owner of any real property under a tax title held by him and his predecessors for four years prior to the commencement of such action and one

that this presumption is inapplicable if the tax title holder has failed to make timely payment of all taxes assessed on the property[11] or if the record owner has actually occupied the property during the four-year period. Except for the requirement of paying taxes, the terms of § 78–12–7.1 are virtually identical to the prerequisites for raising the limitations defense under § 78–12–5.1. Thus, to satisfy the adverse possession statute, a tax title holder must, in effect, satisfy all the requirements of the limitations statute, and, in addition, pay all taxes in a timely manner. Conversely, any tax title holder protected by the adverse possession statute *a fortiori* qualifies to raise the statute of limitations.

If §§ 78–12–5.1 and 78–12–7.1 are viewed as merely alternative ways to achieve a single objective (establishing a tax purchaser's title), any reading of the two sections produces an anomalous result. Reading the two sections cumulatively, as record owners suggest, would render the limitations statute superfluous; reading the two sections independently, as tax purchasers suggest, would render the adverse possession statute superfluous.

We do not believe that the sections are merely alternative routes to the same destination. On the contrary, the Legislature evidently intended to impose limited requirements for a limited remedy, and more inclusive requirements for a more inclusive remedy. The ends are different. The adverse possession statute provides a set of requirements by which a tax title holder may establish ownership by adverse posses-

sion, with all the rights that status implies.[12] The special statute of limitations, on the other hand, merely shields the tax purchaser's title from attack. Because the two sections have distinguishable functions, we see no reason to require a tax title holder to employ both sections in order to achieve the limited protection of the more limited remedy. Here, tax purchasers have invoked only the specific protection of the special statute of limitations. § 78–12–5.1. We hold that they may raise that statute as a defense without reference to the requirements of adverse possession. § 78–12–7.1.

This holding is in accord with the mainstream of our prior decisions on closely related facts. With the sole exception of *Lyman v. National Mortgage Bond Corp., supra,* discussed hereafter, this Court has consistently permitted tax title holders to invoke the limitations statute without so much as discussing their ability or inability to qualify under the adverse possession statute. *Dye v. Miller & Viele,* Utah, 587 P.2d 139 (1978); *Kanawha and Hocking Coal and Coke Company v. Carbon County,* Utah, 535 P.2d 1139 (1975); *Layton v. Holt,* 22 Utah 2d 138, 449 P.2d 986 (1969); *Pender v. Alix v. Brown,* 11 Utah 2d 58, 354 P.2d 1066 (1960); *Peterson v. Callister,* 6 Utah 2d 359, 313 P.2d 814 (1957); *Hansen v. Morris,* 3 Utah 2d 310, 283 P.2d 884 (1955).[13]

We next consider what kind of claim the tax purchasers must make to the property in order to raise a statute of limitations defense. The tax purchasers' only claim to the property in this case was a tax deed derived from an admittedly defective tax sale.

year after the effective date of this amendment he shall be presumed to be the owner of such property by adverse possession unless it appears that the owner of the legal title or his predecessor has actually occupied or been in possession of such property under such title or that such tax title owner and his predecessors have failed to pay all the taxes levied or assessed upon such property within such four-year period.

11. *Bowen v. Olson,* 2 Utah 2d 12, 268 P.2d 983 (1954), holds that redemption of property after taxes have fallen delinquent does not constitute payment of taxes for purposes of the adverse possession legislation.

12. See generally, Powell on Real Property, Vol. 7, ¶ 1025 (1979); Thompson on Real Property, Vol. 5, § 2541 (1975); 3 Am.Jur.2d, Adverse Possession §§ 240, 241.

13. In each of these cases, title was quieted in the tax title holder based on the statute of limitations. However, the above construction of Sections 78–12–5.1 and 78–12–7.1 raises the possibility that only the latter section can appropriately serve as the basis for quieting title in the tax title holder.

Sections 78–12–5.1 and 78–12–5.2 bar actions or defenses against "the holder of a tax title." Section 78–12–5.3 defines "tax title" as "any title to real property, *whether valid or not*," derived from a tax sale. (Emphasis added.) Our Legislature could hardly have expressed itself more clearly. This Court has often cited and applied § 78–12–5.3 to permit holders of invalid or questionable tax titles to claim protection under the special limitations statute. *Kanawha and Hocking Coal and Coke Company v. Carbon County, supra* (tax title assumed invalid); *Layton v. Holt, supra* (tax title alleged invalid due to county auditor's failure to attach affidavit to assessment roll); *Peterson v. Callister, supra* (tax title "technically may not have passed" due to county's failure to follow various statutory steps); *Hansen v. Morris, supra* (tax title not perfected due to failure to comply with necessary statutory steps). We see no reason to depart from these precedents or to reject the plain meaning of the statute. We therefore hold that these tax purchasers may avail themselves of the special statute of limitation regardless of either the invalidity of their tax title [14] or their inability to establish an affirmative claim to title apart from their tax title.[15]

■ Finally, the record owners contend that they are entitled to a presumption of possession that prevents the running of the statute against them. Section 78–12–5.1 does not run against a claimant who has "actually occupied or been in possession" within the specified period; § 78–12–5.2 does not run against "the owner of the legal title" who has "actually occupied or been in actual possession" within the specified period. While the record owners do not claim to have possessed the property in fact, they cite § 78–12–7.1 to the effect that the legal title holder "shall be presumed to have been

possessed thereof within the time required by law," and rely on that provision to satisfy the requirement of actual occupancy or possession found in §§ 78–12–5.1 and –5.2. That reliance is justified only if the Legislature, in these carefully drafted, interlocking statutes, intended the term "actual possession" to be satisfied by the "possession" created by the statutory presumption.

Such an interpretation would fly in the face of the Legislature's deliberate choice to employ the word "actual" in the adverse possession and limitations sections. Sometimes the words "possession" or "occupancy" are used without modification, and sometimes they are preceded by the limiting word "actual." We are not at liberty to ignore a modifier whose meaning is as clear and which is used as selectively and as sensibly as this word in this context. We reaffirm our prior expression on this subject. In *Dye v. Miller & Viele, supra*, at 143, we quoted with approval the following passage from *Churchill v. Onderdonk*, 59 N.Y. 134 (1874):

> "Actual possession" is a legal phrase, is put in opposition to the other phrase, "possession in law," or "constructive possession." Actual possession is the same as pedis possessio or pedis positio, and these mean a foothold on the land, and actual entry, a possession in fact, a standing upon it, an occupation of it, as a real, demonstrative act done. It is the contrary of a possession in law, which follows in the wake of title.

We therefore conclude that the record owners were not in actual occupancy or possession within the meaning of §§ 78–12–5.1 and 78–12–5.2. Consequently, the tax purchasers are legally capable of raising the special limitations defense, and, in the absence of actual possession by the record

---

14. We expressly reserve opinion on whether the special statute of limitations could protect a tax title acquired by means repugnant to fundamental fairness or whether such an application of the statute would exceed the limits of statutory intent or constitutional permissibility.

15. In so ruling, we join other states that hold such a statute to run in favor of holders of

invalid tax titles: *Sears v. County of Calaveras*, 45 Cal.2d 518, 289 P.2d 425 (1955); *Nelson v. Hein*, 183 Kan. 430, 327 P.2d 1028 (1958); *George F. Weaver Sons v. Burgess*, 7 N.Y.2d 172, 196 N.Y.S. 641, 164 N.E.2d 677 (1959); *Hood River County v. Dabney*, 246 Or. 14, 423 P.2d 954 (1967); *Shaffer v. Mareve Oil Corp.*, 157 W.Va. 816, 204 S.E.2d 404 (1974).

owners, are therefore immune from attack on the validity of their tax title.[16]

The record owners have relied throughout on *Lyman v. National Mortgage Bond Corp.*, 7 Utah 2d 123, 320 P.2d 322 (1958). In our view, the precedential value of that case is limited: only two members of the *Lyman* Court subscribed to the main opinion; two concurred specially, in effect joining only the result of the Court's action; and the fifth member dissented persuasively. Since its issuance over twenty-three years ago, the *Lyman* case has not been cited in a single opinion of this Court and it has been soundly criticized in the legal literature.[17] To the extent inconsistent with today's decision, *Lyman v. National Mortgage Bond Corp.* is overruled.

The judgment for plaintiff is reversed and the cause is remanded with instructions to dismiss the complaint. Each party to bear own costs.

MAUGHAN, C. J., and HALL, STEWART and HOWE, JJ., concur.

---

**16.** But see note 13 *supra*.

**17.** P. Lear, "Utah's Short Statutes of Limitation for Tax Titles: The Continuing Specter of *Lyman v. National Mortgage Bond Corp.*—A Need for Remedial Legislation," 1976 BYU L.Rev. 457; Note, "Utah Short Statute of Limitations for Tax Titles Construed," 6 Utah L.Rev. 284 (1958).