380 P.2d 924

**UTAH PARKS COMPANY, a corporation, Plaintiff and Appellant,**

v.

**IRON COUNTY, a Body Corporate and Politic, and Cedar City Corporation, a Municipal Corporation, Defendants and Respondents.**

Nos. 9540 and 9753.

Supreme Court of Utah.

April 30, 1963.

1. Title 76–9–3, Utah Code Annotated 1953.

2. Clark & Marshall, Crimes, 6th ed., Sec. 13.07, p. 881.

Bryan P. Leverich, A. U. Miner, Howard F. Coray, Scott M. Matheson, Gary L. Theurer, Salt Lake City, for appellant.

Orville Isom, J. Harlan Burns, Cedar City, for respondents.

CALLISTER, Justice.

In this action plaintiff sought a refund of the 1958 property taxes paid by it to Iron County levied on the El Escalante Hotel, or, in the alternative a reimbursement to it by Cedar City Corporation of the taxes so paid. From judgments of dismissal as to each action, plaintiff appeals.

On January 1, 1958, plaintiff was the record owner of the El Escalante Hotel property located in Cedar City, Iron County, Utah. On January 31, 1958, plaintiff conveyed, by warranty deed, the property to Cedar City, a tax-exempt municipal corporation.[1] The deed contained the following covenant:

> All taxes and all assessments, general and special, and all installments of assessments lawfully levied upon or assessed against the premises hereinbefore described which become due and payable subsequent to the date hereof, which taxes the grantee (Cedar City) hereby assumes and agrees to pay.

The 1958 ad valorem tax assessment and levy upon the hotel property was made and processed in plaintiff's name and plaintiff received the valuation and tax notices thereon. On or about November 26, 1958, plain-

---

1. Art. XIII, Sec. 2, Utah Constitution.

tiff, without protest, paid the 1958 tax so assessed and levied.

The following year the plaintiff sought unsuccessfully to secure a reimbursement from Cedar City by virtue of the covenant in the deed and unsuccessfully applied for a refund from Iron County pursuant to 59–10–14, U.C.A.1953.[2]

It is the contention of the plaintiff, concurred in by defendant Cedar City, that the 1958 tax was erroneously and illegally collected by the county for the reason that the transfer to the tax-exempt municipality occurred prior to assessment and levy, although, admittedly after the statutory lien date of January 1st.

Section 59–10–3, U.C.A.1953 provides: "Every tax upon real property is a lien against the property assessed; and every tax due upon improvements upon real estate assessed to other than the owner of the real estate is a lien upon the land and improvements; which several liens attach as of the 1st day of January of each year."

Section 59–5–4, U.C.A.1953 provides: "The county assessor must, before the 15th day of April of each year, ascertain the names of all taxable inhabitants and all property in the county subject to taxation except such as is required to be assessed by the state tax commission and must assess such property to the person by whom it was owned or claimed, or in whose possession or control it was, at 12 o'clock m. of the first day of January next preceding, and at its value on that date. * * *"

Iron County argues that the ad valorem tax must be assessed to the owner of the property on January 1st and that a valid, enforceable lien exists as of that date regardless of any transfers of ownership that might occur prior to subsequent assessment and levy. This is undoubtedly true if the parties involved do not enjoy a tax-exempt status. However, a difficult question is presented when the property, subject to taxation on January 1st, is subsequently transferred to a tax-exempt body prior to assessment and levy.

Authorities are divided upon this question, and we are not unmindful of the cases from other jurisdictions cited by the county which undoubtedly support its position. However, we are of the opinion that question must be resolved in favor of plaintiff's contention by virtue of the decision of this court in Gillmor v. Dale.[3] In that case certain property, by court decree, was disconnected from the territory of Salt Lake

---

2. " * * * Any taxes, interest and costs paid more than once, or erroneously or illegally collected, may, by order of the board of county commissioners, be refunded by the county treasurer. * * *."

3. 27 Utah 372, 75 P. 932. This case was cited with approval in State v. Suohomish County, 71 Wash. 320, 128 P. 667 (1912), which is similar to the instant case.

City after the lien date, but prior to assessment and levy. It was there held that the disconnected property was not legally subject to Salt Lake City's tax levy and therefore no lien existed.

It is true that in the Gillmor case the lower court in its decree of disconnection specifically provided that the disconnected property should not be subject to Salt Lake City for any taxes. However, we think this court would have arrived at the same conclusion had such a provision not been included in the decree. It cited with approval the rule that no tax or assessment can exist so as to become a lien upon real property until the amount thereof is ascertained and determined and then stated:

"Under the provisions of the Revised Statutes a city tax does not become a lien on real estate until the rate thereof is fixed, and the tax levied, in pursuance of sections 239, 2694; but when the rate' is so fixed, the amount determined 'and levied, a lien on each tract of real estate assessed by the assessor attaches, by relation, for the amount of the tax thereon 'as of the first Monday of February' preceding the levy. (Citing cases.)

"The city council was not authorized, either under the Constitution or by the provisions of the Revised Statutes, to levy a tax, except on property within its corporate limits, and any levy upon property not within such limits is without authority and void. As no lien can exist for taxes illegally levied, the appellant's [treasurer's] contention in respect to the lien claimed in this case is untenable."

We adhere, in the instant case, to the reasoning of the Gillmor case and reach the conclusion that the 1958 ad valorem tax upon the El Escalante Hotel property was erroneously and illegally levied and collected by Iron County. In reaching this conclusion, it should be noted that the controlling feature is not the mere change of ownership, but rather a change of ownership which has the effect of converting property from a taxable status to that of nontaxable.

Having determined that the tax in question was erroneously levied and collected, it follows that plaintiff's application for refund under 59–10–14, U.C.A.1953, was proper and the board of county commissioners should have ordered the tax refunded.[4]

The judgment of dismissal in favor of Iron County is reversed with instructions to enter judgment in favor of plaintiff. The judgment of dismissal in favor of Cedar City is affirmed. No costs or interest awarded to any party.

HENRIOD, C. J., and McDONOUGH, CROCKETT and WADE, JJ., concur.

4. Nielson v. San Pete County, 40 Utah 560, 123 P. 334.