518 P.2d 1246

**HUNTINGTON CITY, a municipal corporation, Plaintiff and Appellant,**

v.

**C. W. PETERSON, Defendant and Respondent.**

**No. 13150.**

Supreme Court of Utah.

Jan. 31, 1974.

Boyd Bunnell, Price, for plaintiff and appellant.

W. O. Darley, Kent E. Peterson, Salt Lake City, for defendant and respondent.

## 410

ELLETT, Justice:

This appeal is from a judgment quieting title in the respondent (defendant) to a forty-acre tract of land in Emery County, Utah, lying contiguous to the city limits of the City of Huntington in said county.

Huntington City received a warranty deed to the land in question on April 7, 1959, and thereafter the property was not subject to taxes.[1]

Section 59–5–4, U.C.A.1953, requires the county assessor prior to April 15 of each year to assess all property within his county to the owner thereof as of January 1 at twelve o'clock noon. A tax upon real property is a lien against the property assessed and attaches as of January 1 of each year.[2]

■ The record does not show that there was any assessment made by the county assessor prior to the sale to the city. While the deed to the city was not placed of record until May 21, 1959, the ownership by the city was effective when the deed was delivered. The recordation of a deed is of no importance insofar as the passing of title is concerned except where an innocent third party may purchase, mortgage, etc., for value from the seller.

The rate of tax to be levied and collected by the state must be set during the first week of August of each year and by the counties between the last Monday in July and the second Monday in August of each year.

■ Until levy and assessment are made, there is no tax lien on realty; but when made, the tax relates back to the owner as of noon, January 1st of the taxable year.

The Emery County assessor assessed the land to the grantee of the deed to the city, and the levy for taxes was made in August following. No taxes were assessed thereafter. However, the county made a preliminary sale of the property in question for 1959 delinquent taxes on January 10, 1960.

No notice was ever given to the city of the purported delinquencies, and on May 26, 1964, a tax deed was issued by the county to Mrs. C. W. Peterson for the sum of $3.44.

The city purchased the land for use as a garbage dump, and such has been its use ever since. While the city does not operate a garbage collection system, its citizens have used the dump, and the city has maintained the road into the dump and has ex-

1. Article XIII, Sec. 2, Constitution of Utah.

2. Section 59–10–3. U.C.A.1953.

pended money in covering the garbage refuse as occasion required. The city has expended money in connection therewith as follows:

| | | |
|---|---|---|
| November, 1959 | Nielson Bros. Construction | $202.00 |
| November, 1960 | Nielson Bros. Construction | 16.00 |
| November, 1962 | Ferris Grange | 6.25 |
| March, 1964 | Nielson Bros. Construction | 39.00 |
| September, 1966 | Nielson Bros. Construction | 32.00 |
| October, 1968 | Nielson Construction Co. | 37.50 |
| January, 1969 | Nielson Construction Co. | 45.00 |
| January, 1969 | Scott McArthur | 12.00 |
| September, 1972 | Dean Atwood | 51.20 |

The respondent claims that the city is barred from its claim to title by the provisions of Section 78–12–5.2 U.C.A.1953 (1973 Pocket Supplement), which reads:

No action or defense for the recovery or possession of real property or to quiet title or determine the ownership thereof shall be commenced or interposed against the holder of a tax title after the expiration of four years from the date of the sale, conveyance or transfer of such tax title to any county, or directly to any other purchase thereof at any public or private tax sale. . . .

The city relies on a proviso in that section which says:

Provided, however, that this section shall not bar any action or defense by the owner of the legal title to such property where he or his predecessor has actually occupied or been in actual possession of such property within four years from the commencement or interposition of such action or defense.

The trial court found that the respondent was in possession of the property and was entitled to a judgment quieting title in her. It did not find that the plaintiff had not been in possession during the four years prior to suit. In fact, the evidence would not support such a finding.

We, therefore, conclude that the city is not barred by the statute of limitation from asserting its claim to the land.

The respondent further claims that her tax title is good and that the city lost its interest in the land by failing to pay the taxes for the year 1959.

We think that the case of Utah Parks Company v. Iron County et al.,[3] is controlling in this matter. In that case, realty

3. 14 Utah 2d 178, 380 P.2d 924 (1963).

owned by Utah Parks Company on January 1, 1958, was sold to Cedar City on January 31, 1958. Cedar City, like the plaintiff herein, was a tax exempt municipal corporation. In that case this court held that since the real property in question was transferred to a tax-exempt entity prior to assessment and levy, there was no tax due on it even though it was owned by a taxable entity on January 1, 1958.

While that case involved taxes and the instant case has to do with title, we think the Iron County case is directly in point. It held that the tax was invalid. The defendant's claim of title has to be based upon the validity of her tax title. If the tax on the land for which the sale was made is invalid, then the sale is void, and the defendant got no title by her tax deed.

The old case of Gillmor v. Dale[4] also held that when land was disconnected from a municipality after the lien date but before levy and assessment by the municipality, there would be no tax lien upon it.

■ Before the holder of a tax deed can deprive the record owner of land, the burden is upon him to establish his title by showing that the tax and all proceedings in connection therewith were strictly according to the statute.[5]

■ In this matter the respondent has not shown that the assessment and levy of the tax for the year 1959 were made prior to the time when the city acquired its title. It thus appears that the plaintiff in this case owns the land which has served for many years as its "city dump" and that the defendant has no valid claim or interest therein.[6]

The judgment is reversed and the case remanded with directions to quiet title to the city dump in the appellant. No costs are awarded.

CROCKETT and TUCKETT, JJ., concur.

HENRIOD, Justice (dissenting):

Appeal from a judgment quieting title to land in defendant on a counterclaim in a suit filed by the plaintiff seeking a judgment to quiet title in the latter. I dissent and would affirm the trial court on simple principles of appellate review authored many times by this court, particularly with respect to findings of fact of the trial court.

Plaintiff obtained a warranty deed from one Howard, record owner, on April 7, 1959. No one claimed that the county assessor did not assess the property before April 15, 1959, to Howard, the then record

---

4. 27 Utah 372, 75 P. 932 (1904).

5. Fivas v. Petersen, 5 Utah 2d 280, 300 P.2d 635 (1956).

6. The dissent queries "What become of the lien." The answer is "It died aborning."

title holder, which assessment complied completely with Title 59–5–4, Utah Code Annotated, 1953. Such assessment was valid *and plaintiff adduced no evidence to the contrary.* After such assessment, and on May 21, 1959, after the significant April 15th date, the plaintiff recorded its deed.

*A lien attaches to "the property assessed" under title 59–10–3, U.C.A.1953, as of the previous first of January.*[1] A preliminary sale for the 1959 taxes was made on January 10, 1960. *The assessment appears to have been valid, as was the preliminary sale,* after which the property was sold in accordance with the statutory requirements, at the 1964 May sale, to the defendant here, who received her tax deed from the county on June 15, 1964, recorded June 16, 1964. *Thereafter she paid the taxes on the property within the required times through 1971,* after which this suit was filed on March 20, 1972.

There was a conflict in the evidence as to possession of the property, but it appears clearly from believable evidence that "no dumping" and "no trespassing" signs persisted on the property though the city claimed its use for a dump. Defendant, *not* plaintiff, paid the taxes after the May 1964 May sale,[2] and claimed possession, which was supported by other substantial evidence, *leading to the court's finding that the defendant was in possession.*

Besides the above, the defendant followed the statutory requirements necessary to perfect a tax title, and *the procedure followed was not assailed successfully,*—so that the appropriate statutes,[3] under the facts of this case, effectively should bar plaintiff's action here, as limitations statutes of repose in the area of settling land ownership.[4]

Section 59–10–3, U.C.A. (1953) as stated above, provides that every tax upon real property is a lien against property assessed and attaches as of the first day of January of each year. Section 59–5–4 provides that the county assessor must assess the property by the fifteenth day of April of the same year.

The majority opinion does not dispute the time of attachment of the tax lien upon the property. It says that: "A tax [lien] upon real property is a lien against the property assessed and attaches as of January 1st of each year." However, it reach-

1. Utah Parks Co. v. Iron County, 14 Utah 2d 178, 380 P.2d 924 (1963).

2. Bowen v. Olson, 2 Utah 2d 12, 268 P.2d 983 (1954), which payment is notice to an asserted owner of an adverse claim, which is not dispositive here but some evidence of occupancy. See also 78–12–7, U.C.A.1953, re presumption of possession by payment of taxes.

3. Title 78–12–5.1 & 78–12–5.2, U.C.A.1953, as amended.

4. Peterson v. Callister, 6 Utah 2d 359, 313 P.2d 814 (1957); rehearing denied 8 Utah 2d 348, 334 P.2d 759 (1959); Hansen v. Morris, 3 Utah 2d 310, 283 P.2d 884 (1955).

es a final conclusion in the case through a series of novel steps outlined below:

A. It is conceded as noted above that a tax lien attached to the property as of January 1st of the year in question under Section 50–10–3.

B. It states without citing any authority that: "Until levy and assessment are made, there is no lien on realty." Indeed, it is curious that Section 59–10–3 does not impose such requirements for attachment of a valid lien.

C. It concludes that since the assessment and levy of the tax occurred after the date of the transfer of the property to Huntington City, there could be no tax lien upon it.

Quite simply, the main opinion reasons that there is no tax lien upon realty prior to levy and assessment despite clear statutory language saying that there *is* a tax lien on realty as of the first day of January of the year in question which is *before* assessment and levy. Moreover, such conclusion is reached *without showing the* interrelation and dependency of the tax lien, beyond its mere dollar valuation, upon assessment and levy.

The majority opinion relies heavily upon the case of Utah Parks Company v. Iron County and Cedar City Corporation, 14 Utah 2d 178, 380 P.2d 924 (1963). There,

a private corporation brought an action for reimbursement of property taxes paid to Iron County after the property had been conveyed to Cedar City.[5] On January 1, 1958, plaintiff was the record owner of the property and conveyed the property to the City, a tax exempt municipal corporation, on January 31, 1958. The warranty deed executed by plaintiff contained a covenant that all taxes subsequently assessed on the property were to be paid by the grantee (Cedar City). The 1958 ad valorem tax upon the property was processed in plaintiff's name and, without protest, was paid.

As a party to the action, Iron County apparently argued that the ad valorem tax lien had attached to the property as of the first day of January and remained enforceable regardless of any subsequent transfer of title to a party enjoying tax exempt status. This court, however, rejected such argument and concluded that the ad valorem tax was "erroneously" and "illegally" levied and collected upon property held by Cedar City who enjoyed tax exempt status:

> In reaching this conclusion, it should be noted that the controlling feature is not the mere change of ownership, but rather a change in ownership which has the effect of converting property from a taxable status to that of nontaxable. 380 P.2d at 926.

Accordingly, plaintiff was held entitled to a tax refund from Iron County; its alter-

5. In the alternative plaintiff sought reimbursement from Cedar City.

native action against Cedar City for reimbursement was denied.

At first glance *Utah Parks Company* seems dispositive of the case here as evidenced in the majority opinion.[6] However, such a conclusion is untenable for at least two significant reasons. *First, the majority opinion determines taxing rights of Emery County without the county being a party to this lawsuit*. In *Utah Parks Company* the county, claiming to be a holder of a tax lien against the property in question, was a named party in the suit. Surely, it is but a fundamental proposition that this court cannot with binding authority determine the tax rights of a county where it is not a party litigant. For this reason, *Utah Parks Company* posed a taxation issue (although admittedly in the guise of a title question), while the only question before the court in the present action is one of title. Likewise, the main opinion addresses the question, "Who pays the tax?" The answer seems clearly but illusionarily satisfactory, but with respect to this particular case it has asked and addressed the wrong question. The only inquiry that need be posed and dealt with by this court is, "What happened to the county's tax lien following transfer of the property to the city?"

The court addressed itself to this issue in State v. Salt Lake County, 96 Utah 464, 85 P.2d 851 (1938). There, the mortgagor had borrowed money from the state and mortgaged the land as security for payment in 1924. Subsequently, the mortgagor defaulted in his payments and being threatened with foreclosure, executed a warranty deed conveying the mortgaged property to the State of Utah on December 16, 1936. Meanwhile, the property was assessed and sold for taxes of 1932 by bid to Salt Lake County. Taxes for 1933 through 1936 accrued and, upon failure to redeem, the county auditor deeded the property to the county in satisfaction of the taxes. The State then brought suit to quiet title to the property in itself. In dismissing the State's complaint, this court wrote:

> If the taxes for 1932 to 1936 inclusive were levied against this property as that of . . . [mortgagor] . . ., and we have so held, then by what process of reasoning can they be adjudged unlawful after and solely because the State obtained a deed for the property from . . . [mortgagor] . . . in satisfaction of the mortgage? The State by that deed could acquire only such title as the grantor had at the time of the deed; that is, a title encumbered by taxes theretofore lawfully assessed and levied, and by prior tax sales if any . . . .. *To escape payment the State cannot loan its exemption status to its grantor, and have it reach back retroactively* . . .

---

6. I regret that I did not dissent in that case, although I think it to be a stranger here.

*and ward off or cancel taxes already lawfully levied on the property.* That would be abatement of taxes, not exemption from taxation. 85 P.2d at 854.

In the foregoing case the taxes had been assessed and levied upon the property prior to its conveyance by the mortgagor to the State, whereas in the present case the land was conveyed to Huntington City *prior* to assessment and levy. But, as required by the clear language of Section 59-10-3, a tax lien attached as of the first day of January, irrespective of subsequent assessment and levy. There is hardly anything so legally legerdemain or significant about assessment or levy upon the property that would produce a conclusion in the present case different from that in State v. Salt Lake County; quite simply, if the property was in private ownership as of the date of attachment of the lien, the mere fact that it was transferred to a public body should in no way interrupt the taxing process.

State v. Salt Lake County is also significant in that that case was decided in light of Article 13, Sec. 2 of the Utah Constitution:

> The property [of the United States], of the State, counties, *cities,* towns, school districts . . . shall be exempt from taxation. Clause 1, Section 2, Article 13, Utah Constitution.

The tax exempt status of Huntington City emanates from the same constitutional provision. Thus, the nature and extent of the tax exemption privilege, as determined in State v. Salt Lake County with respect to the State of Utah, is authoritative with respect to the nature and extent of the exemption privilege claimed by Huntington City. Clearly, the exemption privilege is dependent upon the status and ownership of the property on the day when the tax lien of any year would attach if subject to taxation; that is, a city which purchases private property after the attachment date takes like any other purchaser—subject to the tax lien.

Authority from other jurisdictions sustains this conclusion. In City of Long Beach v. Aistrup, 164 Cal.App.2d 41, 330 P.2d 282 (1958), the City of Long Beach condemned certain property against which the County of Los Angeles held valid tax liens. In upholding the enforceability of the liens, the California District Court of Appeal stated:

> The statutory scheme would seem to leave no doubt that it was the intention of the Legislature to prevent a lien which attached on the first Monday in March of any year from being extinguished by reason of the fact that after the lien has attached title to the property passes or is deemed to pass to a tax-exempt public corporation in a proceeding in eminent domain. The obligation to pay the taxes accrues the date the lien attaches. The lien has the effect of a judgment and of an execution duly

levied. The judgment is not satisfied or the lien removed until the tax is paid or legally canceled. The lien attaches to the award in the proceeding in eminent domain. 330 P.2d at 290.

The foregoing case is meticuously written and seems persuasive in support of the position of this dissent. See, also, Santa Monica v. Los Angeles County, 15 Cal. App. 710, 115 P. 945 (1911); United States v. Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941).

The concise issue of the *Gillmor* case, cited in the main opinion, was the authority of a municipality to levy a tax upon property detached from corporate limits by judicial declaration. Contrary to the implication of Mr. Justice Ellett's opinion, *Gillmor* does not stand for the proposition that a tax levy made upon a tax exempt purchaser of the property, where such purchase of the property occurred after the attachment of the tax lien, is thereby invalid and somehow metaphysically destroys the pre-existing lien.

Fivas v. Petersen, 5 Utah 2d 280, 300 P. 2d 635 (1956), cited by the majority for the proposition that "before the holder of a tax deed can deprive the record owner of land, the burden is on him to establish his title by showing that the tax and all proceedings in connection therewith were according to statute."

It is generally true that the burden of proof is upon the holder of a tax deed to show that he procured his tax deed in strict compliance with statutory requirements. But, no Utah statute requires that levy and assessment of the tax for the year in question be made prior to the time of acquisition by the tax exempt body. Clearly, the record shows no failure on the part of the tax holder in meeting the requisite formalities in perfecting his deed.

In fact, due to the clear and express language of section 59–10–3 that a tax lien attaches on the first day of January of each taxing year, the burden of proof seems to be upon the party claiming that no lien attached or that after its attachment, it was extinguished by reason of exemption. Clearly, the statutory presumption is that the tax lien attached. See, State v. Salt Lake County, supra, where the burden of proof was upon the State to show that it qualified for a tax exemption; Santa Monica v. Los Angeles County, supra.

Finally, presumptions aside, the normal allocation of the burden of proof is upon the plaintiff to prove his allegations by a preponderance of the evidence. In this case the plaintiff was Huntington City.

The unanswered question in this case is "Where did the lien go?" The obvious answer is that *this* court destroyed it by judicial legislation which now eliminates a statutory lien that is uneliminatable by the judiciary. Who are we to say that once it attaches it can be destroyed by judicial fiat? Who are we to say that a barnacle

on the Ship of Title emotionally can be destroyed by our decision? Who are we who can defy and deform and defame and destroy a lien that we admit once existed but can be extinguished by a delinquent taxpayer's deed in complete defiance of a governmental unit invested with the power of its perpetuation through the tax process, —when such agency never has been given the opportunity of determining its fiscal, taxable rights,—as is the case here.

This case, in my opinion, reflects an abomination of basic governmental rights and controls. Under this case there appears to be a lien that is not a lien, that *is* a lien according to the main opinion, but a ghostly and ectaplasomic one, and ethereal —a background for a title examiner's property rights' seance, a proprietary ennui for a scholar, and an unreasonable, unwarranted and emotional treatment of simple, ordinary, statutory, unbarnacled, decisional, and common law rights.

With perhaps repetitional inexcuse, but with emphatic emphasis, the question remains *in* this case: "What happened to the lien?" The obvious answer is: "We eliminated it."

After this case it will be advisable for municipalities to get recalcitrant taxpayers to give them deeds for "One dollar and other good and valuable consideration" . . . "to have and to hold until death do us part," to divest a legitimate purchaser, who has bid in, bought, and thought he had good title,—only to be divested of his hoped for and legitimately expected title, after payment of all taxes for all the statutory time, when the record title owner successfully has renounced and eliminated his tax obligation by the simple and legally unwarranted device of ducking that tax burden in favor of an eleemosynary outfit and thus defeat a crystal clear, unambiguous statute knowing that this court will condone and forgive him of his tax liability if he but quit-claims his tax-ridden real property to a charitable, untaxable organization, be it the City of Huntington, any of the various churches, the Red Cross, Salvation Army or a thousand others,—ad infinitum.

CALLISTER, C. J., concurs in the dissenting opinion of HENRIOD, J.