CIG EXPLORATION, INC.,
Plaintiff and Appellant,

v.

UTAH STATE TAX COMMISSION; Uintah County; Glen McKee, Lorrin Merrell, and Max Adams, Uintah County Commissioners; and Donna Richens, Uintah County Treasurer, Defendants and Appellees.

No. 940172.

Supreme Court of Utah.

June 14, 1995.

Maxwell A. Miller, Lawrence E. Stevens, K.C. Jensen, Salt Lake City, and Debra Broussard, Houston, TX, for plaintiff.

Jan Graham, Atty. Gen., Kelly W. Wright, Asst. Atty. Gen., Salt Lake City, for Tax Com'n, Joann B. Stringham, Vernal, and Bill Thomas Peters, Salt Lake City, for Uintah County defendants.

ZIMMERMAN, Chief Justice:

CIG Exploration, Inc. ("Exploration"), appeals from the district court's grant of summary judgment, dismissing Exploration's claim for a refund of allegedly overpaid ad valorem taxes for the years 1981 through 1986. Before the district court, Exploration argued that it was entitled to a refund of taxes paid on the basis of valuations of its natural gas wells in Uintah County which, though correct as of January 1st of each relevant year, would have been lower under a subsequent state of affairs. The district court concluded that (i) Exploration's claim was barred by the statute of limitations, and (ii) even if Exploration's claim was not time-barred, Exploration was not entitled to a refund because the alleged valuation error could not have been discovered until after the taxes were collected. We affirm.

The material facts in this case are not disputed. Exploration is a subsidiary of Colorado Interstate Gas Company ("CIG"), an interstate gas pipeline. In 1973, Exploration, CIG, and CIG's customers entered into a stipulation and agreement ("the stipulation") which, among other things, set forth a formula for calculating the price at which Exploration would provide natural gas ser-

vices. In 1982, the Public Service Company of Colorado ("PSC"), a CIG customer and a party to the stipulation, filed a claim with the Federal Energy Regulatory Commission ("FERC"), asserting that Exploration had overcharged its customers for natural gas services in violation of the stipulation's pricing terms. After six years of litigation, FERC sustained PSC's allegations and ordered Exploration to refund approximately $89,000,000 to its customers.

From 1981 to 1986, Exploration owned and paid property taxes on natural gas wells located in Uintah County, Utah. The taxable value of these wells was fixed each year by the Utah State Tax Commission ("Commission") in accordance with the Commission's rule R884–10P–1(B)(4). That rule provided, "The taxable value of the underground gas rights shall be 400 percent of the proceeds from the sale of gas production from each such property during the calendar year prior to the date of assessment...."

In 1989, shortly after FERC determined that Exploration had charged more for gas produced from, inter alia, the Uintah County wells than it was entitled to charge under the stipulation, Exploration submitted a request to the Uintah County Commission for a refund of approximately $1,450,000 in ad valorem taxes paid on its wells from 1981 to 1986. In its request for a tax refund, Exploration claimed that the FERC order directing Exploration to return a portion of its gas-sale proceeds effectively reduced Exploration's net revenues from the Uintah County wells for each of the years 1980 through 1985. Because the Commission's valuations of the Uintah County property for the years 1981 through 1986 were based upon what turned out to be an inaccurate measure of Exploration's gas-sale proceeds from these wells, Exploration claimed that it was "entitled to a refund or a recoupment of ad valorem taxes paid."

On July 5, 1991, after the County had denied Exploration's request for a tax refund, Exploration filed this action in district court, seeking recovery of the allegedly over-paid ad valorem taxes. Exploration grounded its complaint on section 59–2–1321 of the Code, which entitles taxpayers to a refund of taxes which have been "erroneously or illegally collected." Utah Code Ann. § 59–2–1321. The district court granted summary judgment against Exploration, concluding that (i) Exploration's claim was barred by either of the potentially relevant statutes of limitations, Utah Code Ann. § 78–12–26(3), (4); and (ii) even if Exploration's claim was not time-barred, Exploration could not recover under section 59–2–1321 because that section "is concerned with cases in illegal assessment or collection involving factors where the error could objectively be determined at the time of the [assessment or collection]." Exploration appeals, challenging the district court's legal conclusions.

We first state the applicable standard of review. Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993). "When there are no disputed issues of material fact, a challenge to summary judgment presents only a question of law, which we review for correctness." *West v. Thomson Newspapers*, 872 P.2d 999, 1004 (Utah 1994) (citations omitted); *accord Society of Separationists, Inc. v. Whitehead*, 870 P.2d 916, 920 (Utah 1993).

■ Because we find the issue dispositive, we address only the question of whether section 59–2–1321 provides a vehicle by which Exploration can recover its allegedly overpaid ad valorem taxes. Section 59–2–1321 provides in relevant part, "Any taxes ... erroneously or illegally collected, may, by order of the county legislative body, be refunded by the county treasurer." Utah Code Ann. § 59–2–1321. We have held that this language mandates that counties refund erroneously or illegally collected ad valorem taxes. *Utah Parks Co. v. Iron County*, 14 Utah 2d 178, 380 P.2d 924, 926 (1963) (citing *Neilson v. San Pete County*, 40 Utah 560, 123 P. 334 (1912)).[1] Therefore, the determi-

---

1. Although both *Utah Parks Co. v. Iron County*, 14 Utah 2d 178, 380 P.2d 924 (1963), and *Neilson v. San Pete County*, 123 P. 334 (Utah 1912), relied on the predecessor to section 59–2–1321, the statutory language at issue in this case has

native issue in this case is whether the taxes of which Exploration seeks a refund were erroneously or illegally collected within the meaning of section 59–2–1321. We conclude that they were not.

■ Initially, we must determine what constitutes erroneously or illegally collected taxes. When faced with a question of statutory construction, we look first to the plain language of the statute. *State v. Larsen*, 865 P.2d 1355, 1357 (Utah 1993); *Schurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1112 (Utah 1991). Only if we find some ambiguity need we look further. *Schurtz*, 814 P.2d at 1112; *accord World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994) ("Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations."); *see also Beynon v. St. George–Dixie Lodge # 1743, Benevolent & Protective Order of Elks*, 854 P.2d 513, 518 (Utah 1993) ("If doubt or uncertainty exists as to the meaning or application of an act's provisions, the court should analyze the act in its entirety and 'harmonize its provisions in accordance with the legislative intent and purpose.'" (quoting *Osuala v. Aetna Life & Casualty*, 608 P.2d 242, 243 (Utah 1980))). Applying these principles, the district court concluded that the term "erroneously or illegally collected" does not include ad valorem taxes paid on the basis of a valuation which was correct as of the time it was made but which is later alleged to have been erroneous due to factors not existing at the time of the valuation. We agree.

The Code does not define the term "erroneously or illegally collected." We therefore consider the term in light of the entire Property Tax Act, Utah Code Ann. §§ 59–2–101 to –1372. The statutory scheme of property assessment revolves around January 1st of each year, the valuation date. Specifically, section 59–2–201(1), under which the Uintah County property in question was assessed, provides in relevant part:

(1) By May 1 of each year the following property shall be assessed by the commission at 100% of fair market value, *as valued on January 1*, in accordance with this chapter:

. . . ;

(e) all mines and mining claims

. . . .

Utah Code Ann. § 59–2–201(1) (emphasis added). The Property Tax Act's definition of "mine" encompasses the Uintah County property. *See* Utah Code Ann. § 59–2–102(14), (16). We think that under the plain import of this language, the determinative question is the value as of January 1st, *viewed retrospectively*. This leaves no room for us to hold that a taxpayer is entitled to a refund of taxes which were paid on the basis of a valuation that was correct as of a given January 1st but which would have been different had the assessor known of a subsequent state of facts.

■ Our conclusion that Exploration is not entitled to a refund under section 59–2–1321 as a result of the FERC order is supported by our decision in *Shea v. State Tax Commission*, 101 Utah 209, 120 P.2d 274 (1941). In that case, the plaintiff sought to recover diesel fuel taxes paid without protest pursuant to a statute later held to be unconstitutional. The plaintiff argued that he was entitled to a refund under a statute providing that "[w]henever the [state tax commission] through error collects any fee not required to be paid hereunder the same shall be refunded to the person paying the same." Act of March 10, 1937, ch. 65, § 149, 1937 Utah Laws 138. Rejecting the plaintiff's contention that any collection under a statute later declared unconstitutional is a collection "through error," we interpreted the statute authorizing a refund as applying only "to collections which the officials could themselves have determined at the time of collection that they should not collect." *Shea*, 120 P.2d at 276. Under *Shea*, as under our decision today, events occurring subsequent to the collection of the tax did not render the collection erroneous, entitling the taxpayer to a refund.[2]

not changed in any material respect since *Utah Parks* and *Neilson* were decided.

**2.** Our analysis is not affected by the United States Supreme Court's recent decision in *Reich*

For the foregoing reasons, we hold that the taxes of which Exploration seeks a refund were not "erroneously or illegally collected" within the meaning of section 59–2–1321. Accordingly, we affirm.

WE CONCUR:

Richard C. HOWE, Christine M. DURHAM, Leonard H. RUSSON, JJ., and J. Dennis FREDERICK, District Judge.

STEWART, Associate Chief Justice, having disqualified himself, does not participate herein.

FREDERICK, District Judge.

*v. Collins,* —— U.S. ——, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994). Reich, a Georgia taxpayer, sought a refund of state income taxes paid on federal retirement benefits. Georgia's refund statute reads in pertinent part, "A taxpayer shall be refunded any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from him." *Id.* at ——, 115 S.Ct. at 549. Reich argued that the taxes at issue had been "erroneously or illegally assessed and collected" because the law under which the taxes were assessed and collected was subsequently declared unconstitutional. The Supreme Court ordered a refund, holding that Georgia violated the Due Process Clause of the Fourteenth Amendment by "[holding] out what plainly appeared to be a 'clear and certain' postdeprivation remedy, in the form of its tax refund statute, and then declar[ing], only after Reich and others had paid the disputed taxes, that no such remedy exists." *Id.* at ——, 115 S.Ct. at 550. In reaching this conclusion, the Supreme Court found two factors significant: (i) "[T]he average taxpayer reading this language [Georgia's refund statute] would think it obvious that state taxes assessed in violation of federal law are 'illegally assessed' taxes"; and (ii) the Georgia Supreme Court has not placed "any limiting construction on the statute's sweeping language." *Id.* The Court also noted that the Elev-

enth Circuit Court of Appeals had previously denied federal court relief to taxpayers raising claims similar to Reich's, in part because it thought Georgia's refund statute applied to the claims. *Id.* (citing *Waldron v. Collins,* 788 F.2d 736, 738, *cert. denied,* 479 U.S. 884, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986)).

The instant case is distinguishable from *Reich.* First, as we stated above, a plain reading of the Property Tax Act makes clear that taxes paid on the basis of a valuation that was correct as of January 1st are not "illegally or erroneously collected." Therefore, the "average taxpayer" reading section 59–2–1321 in conjunction with the rest of the Property Tax Act would not conclude that CIG is entitled to a refund. Second, although we have not previously placed a limiting construction on section 59–2–1321, this court held long ago that events occurring subsequent to the collection of a tax do not render the collection erroneous. *See Shea v. State Tax Comm'n,* 101 Utah 209, 120 P.2d 274, 276 (1941). Therefore, Utah has not "held out what plainly appeared to be a 'clear and certain' postdeprivation remedy" that would have entitled CIG to a refund. *Reich,* —— U.S. at ——, 115 S.Ct. at 550. Accordingly, we conclude that CIG's due process rights have not been violated in this case.