2003 UT 28

**WOODBURY AMSOURCE, INC.,**
**Plaintiffs and Appellants,**

v.

**SALT LAKE COUNTY, Defendants**
**and Appellees.**

No. 20010939.

Supreme Court of Utah.

June 27, 2003.

---

Mark K. Buchi, Greggory J. Savage, Steven P. Young, Salt Lake City, for plaintiff.

David E. Yocom, Mary Ellen Sloan, Bill Thomas Peters, Salt Lake City, for defendant.

DURHAM, Chief Justice:

¶ 1 Appellants, a group of commercial property owners and landlords (the Landlords), appeal the trial court's grant of summary judgment to appellees, Salt Lake County, the Salt Lake County Board of County Commissioners, and the Salt Lake County Treasurer (collectively, the county).

## BACKGROUND

¶ 2 Before it was revised in 1999, the Utah State Tax Commission rule governing taxation of leasehold improvements provided that "[l]easehold improvements under the control of the lessee shall be taxed as personal property of the lessee." Utah Admin. Code R884–24P–32P (1999) (revised 1999, effective Jan. 1, 2000). The rule also stated that any value of leasehold improvements not taxed as personal property of the lessee "shall be included in the value of the real property," on which the landlord paid real property taxes. *See id.* In practice, this rule was implemented by the personal property division of the County Assessor's office, which collected affidavits from tenants regarding the leasehold improvements under their control and collected taxes from the tenants for these improvements. The assessor used the cost approach in valuing the leasehold improvements. According to the county, the real property division assessed real property independently of the valuation of leasehold improvements, typically using actual lease rates to value the property using the income approach.

¶ 3 On November 30, 1999, the Landlords filed a letter with the county as well as a complaint in district court requesting property tax refunds for the years 1994 to 1999 under section 59–2–1321 of the Utah Code Ann. § 59–2–1321 (2000). Landlords alleged that the county erroneously assessed a double tax on tenant-owned improvements to the Landlords's property by imposing a personal

property tax on the tenants for these leasehold improvements while also imposing real property taxes on landlords for the entire value of their property, including the value of the leasehold improvements. After the county's initial motion to dismiss was denied, it filed a motion for summary judgment on February 28, 2001. The Landlords opposed the motion and filed a motion for a rule 56(f) continuance to allow the Landlords to continue discovery of county tax records. Following a hearing, the trial court denied the Landlords' 56(f) motion and granted summary judgment to the county. The trial court held that section 59–2–1321 did not apply to the Landlords' claim because the claim essentially alleged an incorrect valuation of the Landlords' property rather than a double, erroneous, or illegal assessment of tax entitled to a refund. Accordingly, the court held, the Landlords' claim was governed by section 59–2–1004, which requires a claimant to file an application with the County Board of Equalization to appeal valuation within thirty days of the county auditor's mailing of the valuation notice. Utah Code Ann. § 59–2–1004(1)(a). Because the Landlords had failed to follow section 59–2–1004's requirements and the period for doing so had expired, the court dismissed the Landlords' claim for lack of jurisdiction. The Landlords appealed to this court.

## STANDARD OF REVIEW

¶ 4 We review the district court's summary judgment ruling for correctness, granting no deference to its legal conclusions. *Arnold Indus., Inc. v. Love*, 2002 UT 133, ¶ 11, 63 P.3d 721; *Wilson Supply, Inc. v. Fradan Mfg. Corp.*, 2002 UT 94, ¶ 11, 54 P.3d 1177. In reviewing a summary judgment decision pursuant to Rule 56(c) of the Utah Rules of Civil Procedure, we consider whether the trial court correctly concluded that no genuine issue of material fact exists and whether it correctly applied the law. *Lovendahl v. Jordan Sch. Dist.*, 2002 UT 130, ¶ 13, 63 P.3d 705; Utah R. Civ. P. 56(c). A determination of whether the county's valuation of the Landlords' property constitutes double, erroneous, or illegal taxation under Utah Code section 59–2–1321 is a matter of law, which we review for correctness. Further-

more, "[w]e view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Arnold Indus., Inc. v. Love*, 2002 UT 133 at ¶ 11, 63 P.3d 721.

## ANALYSIS

¶ 5 The issue on appeal is whether the Landlords' assertion that the County Assessor's appraisal practices resulted in double taxation of leasehold improvements states a claim under Utah Code section 59–2–1321, which allows refunds of taxes "paid more than once, or erroneously or illegally collected." The Landlords argue that during the 1990s it was common practice for counties to tax tenants for leasehold improvements under the Tax Commission (commission) rule while also taxing the Landlords for the same improvements by failing to account for their value in the total value of the Landlords' real property. As evidence for its argument, the Landlords point to four Board of Equalization (board) decisions and three commission decisions where the administrative decisionmaker deducted an amount for leasehold improvements when determining the correct valuation of a landlord's property. In all of these cases, the landlord originally filed an appeal with the board under section 59–2–1004.

¶ 6 In addition, the Landlords point to the commission's 1999 rule change, which became effective in 2000 and now requires that "the value of leasehold improvements ... be included in the value of the underlying real property and assessed to the owner of the underlying real property." *See* Utah Admin. Code R884–24–32P (2000). The commission indicated in its Notice of Proposed Rule that "[t]he intent of this amendment is also to reduce and eliminate the double assessment of leasehold improvements and to increase administrative consistency." Utah Bull., Apr. 15, 1999, at 61.

¶ 7 The Landlords' position, therefore, is that taxes on leasehold improvements were "paid more than once" during the period 1994–1999 and are therefore subject to refund under section 59–2–1321. The Landlords also assert that taxes on the leasehold

improvements were "erroneously or illegally collected" because under the Utah Constitution, article XIII, Section 2(*l* ),[1] it is illegal to assess property taxes against a nonowner of the property. The Landlords concede that if they were challenging the county's valuation of their property, they would be required to raise their claim with the board under Utah Code section 59–2–1004. However, the Landlords assert that there is no valuation issue because once it is settled that the county's procedures resulted in taxing leasehold improvements twice, it will only be necessary to subtract the value of the leasehold improvements from the value of the Landlords' real property in order to determine the proper refund amount.

¶ 8 In response, the county argues that section 59–2–1321 is a limited vehicle through which a taxpayer may seek a refund only when the county has collected a tax due to a mistake that is clear or apparent from county records. According to the county, the Landlords' claim is one of erroneous property valuation rather than double, erroneous, or illegal tax collection, and the Landlords therefore should have brought this claim before the board under section 59–2–1004. The county further asserts that its application of the income approach to assess the value of commercial buildings, using what it believes to be the actual lease rates for the property, results in a property valuation that captures only the owner's interest and not the value of leasehold improvements. This is because the tenant would not be paying rent on the improvements that the tenant owns. According to the county, in order for the leasehold improvements to have been taxed twice, the county would have had to add the value of the leasehold improvements, as determined by the Personal Property Division, to the value of the Landlords' real property. Since there is no indication that such a calculation occurred, the county asserts, the Landlords cannot establish double taxation.

¶ 9 At common law, "taxes when paid could not be recovered back unless paid under what amounted to duress or legal compul-

sion." *Neilson v. San Pete County*, 40 Utah 560, 571, 123 P. 334, 338 (Utah 1912). A taxpayer who paid a tax voluntarily, in other words, could not receive a refund of the tax under any circumstances, even when the taxing authorities had committed blatant error. Because this rule was "found to be unnecessarily harsh," states enacted statutes to provide for refunds of erroneously or illegally collected taxes. *Id.* The Utah statute that serves this function is section 59–2–1321, which provides:

> Any taxes, interest, and costs paid more than once, or erroneously or illegally collected, may, by order of the county legislative body,[2] be refunded by the county treasurer, and the portion of the taxes, interest, and costs paid to the state or any taxing entity shall be refunded to the county, and the appropriate officer shall draw a warrant for that amount in favor of the county.

Utah Code Ann. § 59–2–1321 (2000). We think it clear, both from our prior decisions and from the statutory scheme as a whole, that the scope of this statute is relatively narrow.

¶ 10 Section 59–2–1321 must first be understood in relation to another statutory provision, section 59–2–1327, which allows a taxpayer to bring an action in district court to recover a tax or any portion thereof that the taxpayer claims is unlawful and has paid under protest. Utah Code Ann. § 59–2–1327 (2000). The pay-under-protest requirement is in accord with the common law rule; a tax paid under protest is the equivalent of a tax paid under duress or compulsion and therefore may be recovered by the taxpayer if a court agrees that the tax was unlawfully collected.

¶ 11 In the *Neilson* case, this court compared the predecessors to the current sections 59–2–1321 and 59–2–1327. 123 P. at 336–38. There, the court explained that "[t]he taxes mentioned in [Comp. Laws 1907,] section [2642, the predecessor to section 59–2–1321,] are such only which it is clear the

---

**1.** Prior to January 1, 2003, the relevant section of the Utah Constitution was article XIII, section 3(1).

**2.** The Board of Equalization is the county legislative body to which this provision refers.

county had no authority to collect, and, in case they are collected, has no legal right to retain them." *Id.* at 338. The *Neilson* court distinguished section 2642 from section 2684, the predecessor to the current Utah Code section 59–2–1327, by noting that section 2642 allows a taxpayer to obtain a refund without having paid under protest and without going to court. "[T]he illegality of the tax is absolutely assumed," and only if the county refuses to provide the refund must the taxpayer go to district court to appeal the decision.[3] *Id.* at 338, 123 P. 334. The court considered it "easy to perceive why payment under protest is required for taxes specified under section 2684, and why none is required for those mentioned in section 2642," evidently because it regarded section 2642 as covering only those instances where the payment "more than once" or "erroneously or illegally" collected is a "matter of record in the county treasurer's office." *Id.* at 338. In such a situation, where the county treasurer has the information necessary to make the determination at hand, the county commissioners need only receive some form of notification from the taxpayer to be "as well prepared to look into the matter as they would be by the filing of a more formal claim against the county" in court. *Id.*

¶ 12 Thus, in order for a taxpayer to receive a refund under section 59–2–1321, as interpreted by *Neilson*, the taxpayer must be able to point to a specific double payment, error or illegality that is readily apparent from county records. If the illegality is in dispute, the taxpayer must first pay under protest before he has standing to challenge the tax in court under section 59–2–1327.

¶ 13 Our later cases follow *Neilson's* construction. In *CIG Exploration, Inc. v. Utah State Tax Commission,* 897 P.2d 1214, 1216 (Utah 1995), we held that taxpayers were not entitled to a refund under section 59–2–1321

when they paid property taxes "on the basis of a valuation that was correct as of a given January 1st," even when a subsequent federal agency decision reduced a property's revenue, making the original valuation inaccurate. Such an occurrence, we reasoned, did not constitute a tax "erroneously or illegally collected within the meaning of section 59–2–1321." *Id.* In support of our decision in *CIG,* we cited *Shea v. State Tax Commission,* 101 Utah 209, 120 P.2d 274 (1941), which "[r]eject[ed] the plaintiff's contention that any collection under a statute later declared unconstitutional is a collection 'through error.'" *CIG,* 897 P.2d at 1216.

¶ 14 Other provisions in the Property Tax Act also support our view of section 59–2–1321 as providing for taxpayer refunds only in limited circumstances. The legislative scheme clearly contemplates that the primary vehicle for challenging property tax assessments is the administrative appeals process laid out in section 59–2–1004. A taxpayer may initiate this process by filing an application to the County Board of Equalization within thirty days of notice of valuation. Utah Code Ann. § 59–2–1004(1)(a) (2000). The board then holds a public hearing in accordance with section 59–2–1001 and renders a decision as to whether the property's valuation is correct. *Id.* The taxpayer may appeal the board's decision to the State Tax Commission. *Id.* § 59–2–1004(4). Judicial review of commission decisions is provided for under sections 59–1–601 to –610 (governing review of formal adjudicative proceedings).

¶ 15 We understand this statutory scheme as mandating that taxpayers who dispute the valuation of their property take their claim to the board under Utah Code section 59–2–1004 within the prescribed time period or waive it. Once a taxpayer has

---

**3.** Although the language of section 2642 may appear to give the county discretion over whether to grant the taxpayer a refund, we held in *Neilson* that when "the taxes in question are clearly illegal and void," the taxpayer is "therefore entitled to recover." *Id.* at 340. In other words, the county's discretion is limited to those cases where the illegality of the tax is not clear. *See CIG Exploration, Inc. v. Utah State Tax Comm'n,* 897 P.2d 1214, 1215 (Utah 1995) ("We

have held that th[e] language [of section 59–2–1321] mandates that counties refund erroneously or illegally collected ad valorem taxes."); *Utah Parks Co. v. Iron County,* 14 Utah 2d 178, 380 P.2d 924, 926 (1963) (holding that the county should have ordered a refund where the court was able to determine that a property's transfer to a tax-exempt entity after the date of statutory lien but prior to the property's assessment made the imposition of tax erroneous and illegal).

waived his right to contest the county's valuation, he may still pay the tax under protest if he disputes the legality of the tax and wishes to bring suit in district court under Utah Code section 59–2–1327. If he prevails, he is entitled to recover the portion of tax paid under protest. In addition, in the limited circumstance where a taxpayer can point to an error of fact or law in the collection of the tax, or a payment more than once, that is readily apparent from county records, he may apply to the commission to refund the mistakenly collected amount under Utah Code section 59–2–1321, and if denied, may appeal the commission's decision in district court. Thus, we do not hold that a taxpayer may never receive a refund under section 59–2–1321 for a valuation error, but such an error must be of a type that is readily apparent from county records. An alleged error in choice or application of appraisal methodology is unlikely to fit within this limited category.

¶ 16 Other states with similar statutory schemes have attributed similarly narrow meanings to their refund statutes. *See, e.g., Meredith v. Elliott*, 247 S.C. 335, 147 S.E.2d 244, 248 (1966) ("Under [a] statute relating to refunding of taxes which have been 'erroneously or illegally exacted or paid,' the quoted words refer to an assessment illegal because of jurisdictional defect [due to the fact, for example, that the assessed property was exempt or located in another county] and do not include a mere error of judgment in valuing the property."); *S & R Props. v. Maricopa County*, 178 Ariz. 491, 875 P.2d 150, 160 (Ct.App.1993) ("[T]he [refund] statute appears to contemplate a method by which a taxpayer can call to the attention of the [taxing authorities] an alleged error and obtain relief if the error is indisputable.... This construction of the statutory scheme presupposes that the error ... will be one plainly and indisputably revealed by the county's own records or the taxpayer's claim."); *Quaker Oats Co. v. Stanton*, 96 S.W.3d 133 (Mo.2003) (holding that the state refund statute did not provide relief where the taxpayer sought a refund for an error that it was responsible for and where it had received notice of the assessment that result-

ed from its mistake but did nothing to correct the situation before paying the tax).

¶ 17 Maintaining the limited scope of such refund statutes is in accord with public policy. In his treatise on taxation, Justice Thomas Cooley notes:

> To accord a right of recovery in every case where, after assessments have been made without appeal, budgets and tax rules predicated thereon, the taxes paid without objection or protest, and the monies expended for the public purposes, it afterwards develops that some mistake has been made in the assessment, would work disastrous results. It must of necessity be confined to extreme and exceptional cases.

3 *Cooley on Taxation*, § 1295, 4th ed. (1924); *see also Crest Communications v. Kuehle*, 754 S.W.2d 563 (Mo.1988) ("[P]ublic policy discourages suits for the refund of taxes erroneously paid or illegally collected and favors certainty in the collection of revenue."). Thus, a broader interpretation of section 59–2–1321 than the one we maintain here would, we believe, threaten the integrity of other provisions of the Property Tax Act, in particular sections 59–2–1004 and 59–2–1327, and the stability of Utah's property taxing scheme.

¶ 18 Applying our interpretation to the case at hand, we hold that the Landlords' claim does not fit within the scope of section 59–2–1321. We reject, first of all, the Landlords' argument that their claim fits under the "paid more than once" clause of this provision. We believe this clause refers only to more than one payment by a single taxpayer, for example due to forgetfulness or simple error. Considering a situation where a property owner sought a refund, claiming that he had erroneously paid taxes according to an assessment that included the property belonging to another, a New York court held that:

> Such error as existed was an error of the assessors going to substance and only made manifest by extrinsic facts. It was not therefore of a character that could be corrected at this time [under the state refund statute].... The situation was one of overassessment and the petitioner's

remedy was to have sought correction on grievance day.

*In re Morewood Realty Holding Co.*, 241 A.D. 841, 271 N.Y.S. 392, 396 (N.Y.App.Div. 1934).

¶ 19 We also reject the Landlords' argument that their claim fits under the "erroneously or illegally collected" provision. The Landlords have not pointed to any place in the record that indicates an erroneous or illegal assessment of their property. In addition, it is apparent from both parties' arguments that they do not allege an error of fact or law that would be readily apparent from county records. The Landlords' quarrel is with the appraisal methodology that county assessors may, or may not, have used when assessing the value of their property. The Landlords claim that this methodology may have captured the value of leasehold improvements in the property's assessment. However, the county disputes this assertion, claiming that its use of actual lease rates for appraisal purposes prevents such a result. The Landlords are essentially asking this court either to make a blanket determination that all county assessments of commercial property with leasehold improvements erroneously and illegally included the value of the improvements in the valuation of the property or to authorize an unlimited fishing expedition in county records for some clear evidence that their particular properties were erroneously or illegally assessed. Section 59–2–1321 was never intended to serve this function.[4]

¶ 20 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Judge MOWER concur in Chief Justice DURHAM's opinion.

¶ 21 Having recused himself, Justice RUSSON does not participate herein; District Judge DAVID L. MOWER sat.

---

4. Nothing in this decision is intended to alter our holding, in *Board of Equalization v. Utah State Tax Comm'n ex rel. Benchmark, Inc.*, 864 P.2d 882, 884 (Utah 1993), that we would grant no deference to the commission's conclusion that a particular appraisal methodology met state constitutional and statutory requirements for ad valorem taxation. Such questions of law, absent an explicit legislative grant of discretion to the commission, are reviewed de novo by this court. *Id.* In order to raise such a question in this forum, however, a taxpayer must first either exhaust administrative remedies under section 59–2–1004 or pay his or her tax under protest in accord with section 59–2–1327.